## STATE v. HENRY JONES.

*Plea in Abatement—Quashing—Jurors, standing aside—Justice's Warrant—Jurisdiction—Homicide—Officer, when protected by warrant—Special Deputy.*

1. A plea in abatement, or a motion to quash, after plea of "not guilty" entered, is only allowed at the discretion of the court.
2. The standing aside jurors to the end of the panel, in the trial of capital felonies, where the prisoner's challenges are not exhausted before the "jurors stood aside" are tendered, is the recognized practice in this state.
3. A justice's warrant for larceny, which describes the offence with sufficient precision to apprize the accused of the charge, is good, though defective in form, and will protect the officer who executes it.
4. But in cases determinable before a justice, the warrant is the "indictment," and must set out the facts constituting the offence with certainty.
5. A regular officer is bound to obey a warrant directed to him, if it is for an offence within the jurisdiction of the justice (either to bind over or try

the party); and a special officer is equally protected by the law when he executes such warrant, though not bound to obey it, nor sworn as a regular officer.

6. The prisoner, under the circumstances of this case, is guilty of murder in slaying the officer specially appointed to execute the warrant, the same being read to the prisoner, who was also informed that the arrest was made under its authority.

(*State* v. *Eason*, 70 N. C., 88; *State* v. *Benton*, 2 Dev. & Bat., 196; *State* v. *Bryson*, 84 N. C., 780; *State* v. *Hawes*, 65 N. C., 301, cited and approved).

INDICTMENT for murder tried at Spring Term, 1882, of WAKE Superior Court, before *Bennett, J.*

On the 17th of February, 1882, the bill of indictment was returned into court, " a true bill," by the grand jury, and on the next day, in the absence of one of the prisoner's counsel and before either of his counsel, assigned at the time of prisoner's arraignment, had an opportunity to examine the record, the prisoner was arraigned and pleaded not guilty—one of his counsel who was present, not asking for time—and the case was set for trial on the first day of March, 1882, when the prisoner, through his counsel, moved to be allowed to withdraw his plea of not guilty, and to enter a plea in abatement. This was refused by the court for reason that the grand jury had been detained a week for any motion to be made in the case, and if this motion had been made in the interval, between the arraignment and the discharge of the grand jury, it would have been allowed; but none having been made and the grand jury being discharged, the motion could not be allowed. Prisoner excepted.

Counsel then moved to quash the bill upon several grounds, which was disallowed, and the prisoner excepted.

In forming the jury, the regular venire having been exhausted, the court ordered several special venires of talesmen to be summoned—1. fifty; 2. twenty-four; 3. twelve—and during the call of the first, the solicitor was allowed to stand aside three jurors until the whole number, then in the box, was drawn and

tendered; on the call of the second, one juror was stood aside until the panel was exhausted. The prisoner excepted to the ruling of the court.

There was much evidence introduced by the state, substantially as follows: On the 14th of February, 1882, the deceased, A. H. Blake, accompanied by John Q. Watkins, arrested the prisoner by virtue of a state's warrant which Blake was specially authorized to execute. The warrant was read to the prisoner by Blake, who told him that he arrested him under its authority, which was as follows:

" Burwell Freeman, being sworn, complains on oath to H. Watkins, one of the justices of the peace of said county, that Henry Jones did, on the 31st of January, 1882, steal, take and carry away one ox belonging to the said Burwell Freeman, and this complainant further says, that said Henry Jones did maliciously commit the said offence, and he prays that a proper warrant issue, to the end that the person accused be brought before a magistrate to be dealt with according to law." (Signed by Freeman, and sworn to before the justice on the 13th of February, 1882).

" State       ⎫
      v.        ⎬ Warrant for Larceny.
Henry Jones, ⎭

*To any constable or other lawful officer of Wake county:*

Whereas, complaint has been made before me this day, on the oath of Burwell Freeman, that Henry Jones did, on the 31st day of January, 1882, with force and arms, at and in the county aforesaid, steal, take and carry away one ox, against the peace and dignity of the state: These are, therefore, to command you to forthwith apprehend the said Henry Jones, and have him before me, at my house, then and there to answer the said charge, and be dealt with according to law. Given under my hand and seal, this the 13th of February, 1882." (Signed by the justice).

Endorsed as follows: " For the lack of an officer, I hereby depu-tize A. H. Blake to serve the within warrant." (Signed by the justice).

After the prisoner's arrest, while going to a neighbor's house, not far distant from the prisoner's house, he attempted to make his escape by flight. The deceased ordered him to stop; he ran and was pursued by deceased about four hundred yards; the deceased fired at him three pistol shots, but without effect; pris-oner was overtaken and they went with him to his house; on arriving there, the prisoner went in and put on his Sunday clothes, and then went in the kitchen to eat his breakfast, and after-wards came out and took a chair and sat down in the door of the house, with his head down. Blake told him they must go, as the trial was at nine o'clock, and prisoner said he was not going until Henrietta (his wife) came, if it was a month. Blake then sent John Watkins to a store, not far distant, for help. When Watkins left, the deceased was sitting on a stump about thirty feet from the house, holding a pistol in each hand, uncocked, with the muzzles towards the ground, the same exhibited on the trial.

The report of a gun was heard in the direction of prisoner's house, about a half hour after Blake shot at prisoner. Upon the return of Watkins, and one Peebles who came with him, to the aid of Blake, he was found lying dead (shot in the eyes and head) about six feet directly in front of the house and eight feet from a crack in the house near the door. The crack was about twelve inches long and about three-quarters of an inch wide, one of the logs of the house being powder-soiled and torn with shot. About thirty feet from the house there was a dogwood tree, the bark of which was freshly torn with shot; and the deceased was lying in a direct line between the house and the tree.

The door of the house was open when Watkins left to go to the store, but when he returned it was shut and the prisoner gone, and there were no pistols about the body of the deceased. Upon entering the house, a musket was found in one of the corners, bearing signs of having been recently fired, and the

smell of gunpowder was perceptible in the house, as soon as the door was opened. There were no signs about the house of pistol balls having been fired into it, or inside of it.

While under arrest, the prisoner said if he got clear some one would have to die; and while in jail, when asked by the justice who issued the warrant, why he had done as he did, his reply was, "nothing but meanness."

There was evidence that on the morning after the homicide a horse belonging to one of the neighbors was missing, which evidence was objected to by prisoner, but allowed by the court. The horse was found a day or two afterwards at Enfield in Halifax county, when the prisoner was arrested, and the two pistols, belonging to deceased, found loaded in his possession.

While the prisoner was under arrest, on his re-capture and return to Raleigh, he said he did not think the deceased had the right to arrest him, that he did not wish to be taken, that deceased shot at him twice, and he fired at deceased and hit him in the face, and that he was in the house when he shot the deceased.

The counsel for prisoner asked for the following special instructions:

1. The particularity required in indictments cannot be dispensed with in warrants, and if a justice issue a warrant which does not on its face contain all the charge, and all the circumstances essential to its legal form and constitution, in charging a criminal offence, such a warrant is void.

2. An officer acting under a void warrant is a trespasser, and must take notice of its character at his peril; and if he, in executing it, kill the prisoner with a deadly weapon, the fact that prisoner was attempting to make his escape by flight only, is no justification, and the killing is murder.

3. An officer acting under such warrant, or one which on its face does not charge any criminal offence for which the prisoner could be held for trial or punished, is bound to take notice of such defects at his peril; and if prisoner is not armed and not

in actual resistance, and attempts to escape by flight only, and under such circumstances the officer shoots and discharges a pistol three or more times at prisoner, the officer, by the excessive force used and wanton abuse of authority, forfeits his rights to protection as an officer; and the prisoner may, if he has reasonable apprehension that great bodily harm will be done him by such officer, slay the officer, and the killing will be manslaughter, at most.

4. If a warrant is void, it affords no protection to the officer attempting to execute it, and if its execution is resisted by the prisoner, he is guilty of no offence against the law, though in doing so the person of the officer is assaulted.

5. No officer has the right to slay a prisoner, for attempting to escape by flight only, except in capital felonies.

6. If an officer for no other cause than the flight, the warrant being void and the crime charged not a capital felony, shoot at prisoner several times with a pistol, and prisoner kill him through reasonable fear, it is manslaughter; whether the fear was reasonable or not is a question for the jury, and they must put themselves in the shoes of the prisoner and consider all the circumstances at the time of the killing.

7. If, in this case, the deceased by shooting at the prisoner caused him, through fear, alarm or cowardice, to be under the impression that great bodily harm was about to be done to him, and under such impression he killed the deceased, he would not be guilty of murder or manslaughter.

8. Or if the deceased by shooting at prisoner several times, he being under arrest under a void warrant, and he did nothing but attempt to escape by flight, caused the prisoner to be under the impression or belief, which was caused by the fear, alarm or cowardice put in operation by the shooting, that great bodily harm was about to be done him, and under such impression or belief he killed the deceased, he is only guilty of manslaughter.

9. The reasonableness of such impression or belief is not that of the jury, but of the prisoner.

10. That to constitute Blake, the deceased, a lawful officer, he must have been sworn.

11. If Blake was not a known officer, he must have shown his authority to act.

12. That his authority was not shown by what he declared, but the authority which he has, is his justification.

13. If prisoner did not know Blake was an officer, and he was not a known officer and did not show his authority, the prisoner is not guilty of murder.

14. To justify the killing of a felon for the purpose of arresting him, the slayer must not only show a felony actually committed, but also that he avowed his object to arrest and the felon refused to submit.

15. If the jury should find from the evidence that deceased was, at the time of the fatal shot (if they find that prisoner fired it), maliciously or unlawfully committing an assault upon the prisoner with a deadly weapon, and the prisoner had reasonable ground to believe that his life was in danger, or that he was to be subjected to serious bodily harm, the prisoner is not guilty.

16. If at the time the prisoner fired the fatal shot (if the jury find he did fire it) he did not know and deceased had not made known to him that he was an officer, and the deceased was not in fact legally authorized to arrest him, the prisoner is guilty of manslaughter at most.

17. If the prisoner believed and had reason to believe, that although the deceased did not intend to take his life, yet did intend and was about to do him some enormous bodily harm, such as maim for example, and under this reasonable belief he killed the deceased, the offence is homicide *se defendendo,* and excusable.

18. If deceased was acting under a void warrant, and it did not appear that the occasion was an extraordinary one, he was not in any sense an officer.

19. If the warrant is void, the appointment is void.

20. An officer has the right to refuse to execute any warrant, precept or mandate, which is void on its face.

His Honor refused to give the instructions, and proceeded to give his charge to the jury at considerable length, which was excepted to by the prisoner's counsel, but they failed to specify any ground of error.

The prisoner was found guilty of murder, and appealed from the judgment of the court.

*Attorney-General,* for the State.
*Messrs. W. H. Bledsoe* and *C. K. Lewis,* for prisoner.

ASHE, J. We have carefully perused and considered the charge given by the judge to the jury, and have been unable to discover any error. The principles of law, applicable to the facts of the case, were fairly and fully expounded by him, and left no ground of complaint on the part of the prisoner. Nor have we been able to detect any error in his refusal to give the several special instructions asked by the prisoner, nor in his refusal to permit the prisoner to file a plea in abatement, or to entertain his motion to quash the indictment.

Whether a plea in abatement shall be allowed, or a motion to quash entertained, after the plea of " not guilty " has been entered, are matters addressed entirely to the discretion of the court. Any special matter in abatement must be pleaded at the time of arraignment, before the plea of "not guilty," (Arch. Cr. Pl., 78 a), and motions to quash after plea are only allowed at the discretion of the court. *State* v. *Eason,* 70 N. C., 88.

The exception taken on the trial to the ruling of the court in permitting the solicitor to stand aside jurors until the panel was exhausted, cannot be sustained. It is a practice which has long prevailed in our courts, in the trial of capital cases, and has been held to be no ground of exception, where it has been reasonably exercised by the court, and the prisoner's challenges have not been exhausted before the "jurors stood aside" have been ten-

dered. *State* v. *Benton*, 2 Dev. & Bat., 196. Here, there were not more than three jurors made to stand aside from either panel, and the prisoner's challenges were never exhausted.

We are of opinion His Honor committed no error in his refusal to give the instructions prayed for. Upon the evidence in the case, he would not have been warranted in giving those instructions. The first, second, third, fourth, fifth, sixth, eighth, sixteenth, eighteenth, nineteenth and twentieth instructions asked are predicated upon the assumption that the warrant under which the arrest was made is void. But is it void ? This is the hinge upon which the case turns.

It is insisted by prisoner's counsel, that the same particularity is required in warrants issued by justices of the peace as in indictments; and that the warrant, under which the prisoner was arrested, is defective in omitting the word "felonious," and in not alleging the ownership of the property charged to have been stolen. These would certainly have been fatal defects in a bill of indictment for larceny. But, in warrants, the law does not require the same particularity as in indictments; and although a warrant may be defective in form, or not strictly legal, if it is for an offence within the jurisdiction of the justice, the officer to whom it is directed, if a regular officer, is bound to obey it, and if a special officer, who, though not bound to obey, yet undertakes to execute it, they are equally protected by the law.

In 1 Hale P. C., 460, it is laid down, "that although the warrant of the justice be not in strictness lawful, as if it express not the cause particularly enough, yet, if the matter be within his jurisdiction as justice of the peace, the killing of such officer, in execution of his warrant, is murder; for in such case, the officer cannot dispute the validity of the warrant."

This passage of HALE was cited with approval by Judge LUMPKIN of the supreme court of Georgia, in *Boyd's case*, 17 Ga., 194, where a similar objection was made to a warrant as in this case. The court say : "If this be law, and who will doubt its reasonableness, it is decisive of this exception. It would be

monstrous to lay down a different rule. It would put in jeopardy the life of every officer in the land. It never could be intended that they should determine, at their peril, the strict legal sufficiency of every precept placed in their hands." See also, 2 Hale, 111; *King* v. *Wilkes*, 2 Wil. Rep., 151; and *Rex* v. *McCulley*, 9 Coke Rep., 117, where it was resolved by all the judges, met in conference upon the record of conviction in that case, that if there be error in awarding process, or in the mistake of one process for another, and an officer be slain in the execution thereof, the offender shall not have the advantage of such error, but that the resisting the officer, as he comes in the King's name, is murder."

In Chitty's Criminal Law, 41, we find the doctrine thus stated: "It does not seem to be necessary to set out the charge, or offence, or evidence, in a warrant to apprehend, though it is necessary in the commitment; and it has been observed that cases may occur in which it would be improvident to let even the peace officer know the crime of which the party to be arrested is accused." From this it will be seen, that more particularity and certainty in the description of the crime charged are required in commitments than in warrants; yet it is held, that though in a commitment for felony it was necessary that it should specify the species of felony, as for felony for the death of J. S., or for burglary, "it was not necessary to allege in the *mittimus* that the offence was 'feloniously' committed."

In *Rex* v. *Croker*, 2 Chitty, 138, the defendant was committed for embezzling bank notes; the warrant did not state that the act was done "feloniously," and it was therefore claimed that the defendant was entitled to his discharge. But the court said, a commitment need not have the precision of an indictment. The commitment states general evidence, and though not formally sufficient to find him guilty, yet it is sufficient if the *corpus delicti* be shown to us to warrant the conviction.

The conclusion that we deduce from the authorities is, if the warrant is for an offence within the jurisdiction of the justice, and the crime charged is described with sufficient precision to

apprize the accused of the offence with which he is charged, the warrant is good and will protect the officer. But this applies only to those cases where the justice acts ministerially, as in warrants to arrest offenders where he has no final jurisdiction. Where he takes cognizance of criminal actions within his jurisdiction, the warrant is "the indictment," and must set out the facts, constituting the offence, with such certainty that the accused may be enabled to judge whether they constitute an indictable offence or not, and that he may be enabled to determine the species of offence with which he is charged. *State* v. *Bryson*, 84 N. C., 780; *State* v. *Hawes*, 65 N. C., 301.

We are of opinion that the warrant in this case is not illegal, and was a sufficient justification to the deceased, and the slaying him while acting in obedience to its commands, under the circumstances of this case, constitutes the crime of murder.

The seventh, ninth, fifteenth and seventeenth instructions asked are not supported by any evidence in the case; the tenth is not sustained by any authority; the eleventh, twelfth, thirteenth and fourteenth are met by the proofs that the warrant was read to the prisoner by the deceased at the time of the arrest, and he was told that the arrest was made by the authority of that warrant.

There were some exceptions taken to the evidence on the trial, but deeming them untenable, it is needless to consider them.

There is no error. Let this be certified, &c.

No error.                                                    Affirmed.