STATE OF NORTH CAROLINA v. BERTHA MAE WRIGHT, MADELINE PEARSOLL, SARAH MIDGETTE, PHOEBE PEARSOLL AND FRANCES MARSHALL, CASES #504 AND #513.

(Filed 10 July 1968.)

**1. Grand Jury § 3—**

While a Negro moving to quash an indictment on the ground of racial discrimination must prove affirmatively the intentional exclusion of members of his race from the grand jury, he may do so by circumstantial evidence, and a showing that in the county over a substantial period a small proportion of Negroes had served on the jury or a showing that the jury scrolls had a symbol designating the race of those appearing thereon, while not conclusive, does raise a *prima facie* case of discrimination, casting the burden upon the State to go forward with evidence sufficient to overcome the *prima facie* case.

**2. Same—**

The mere denial by the officials charged with the duty of listing, selecting and summoning jurors that there was any intentional, arbitrary or systematic exclusion because of race is insufficient to overcome a *prima facie* showing to the contrary, nor is a *prima facie* case rebutted by reliance upon a presumption that public officers have discharged their sworn official duties.

**3. Same—**

To overcome a *prima facie* showing of racial discrimination in the composition of the grand jury, there must be a showing by competent evidence that the institution and management of the jury system of the county is not in fact discriminatory, and where the evidence is contradictory and conflicting the trial judge must make findings as to all material facts.

**4. Same—**

Where defendant's own evidence is sufficient to rebut a *prima facie* showing of unlawful discrimination in the composition of the grand jury which indicted him, the State is not required to go forward and produce independent evidence to the same effect.

**5. Same—**

Findings of fact made by the trial court on the question of grand jury discrimination are conclusive on appeal when supported by competent evidence produced either by the defendant or the State and will not be disturbed unless so grossly wrong as to amount to an infraction of constitutional guaranties.

**6. Same—     Evidence held insufficient to show systematic exclusion of grand jurors by race.**

On a motion to quash an indictment on the ground that Negroes were systematically excluded from the grand jury, defendant's evidence that a proportionately small number of Negroes had served on grand juries in the county during the preceding ten years and that the list of prospective jurors was prepared from taxpayer lists which were kept separated by race and from voter registration lists which designated the voter's race, even if sufficient to make a *prima facie* showing of systematic exclusion,

*is held* rebutted by defendant's further evidence that an attempt was made by those preparing the list of prospective jurors to include a proportionate number of Negroes, that this list contained no indication of color or race, that the board of commissioners placed the names on this list in the jury box except for those removed because of death, nonresidency, bad moral character or mental incapacity, that no name was eliminated because of race, and that the names placed in the jury box carried no racial designation, and the denial of the motion to quash upon findings supported by such evidence was proper.

**7. Same—**

Upon the hearing of a motion to quash an indictment by reason of racial discrimination in the composition of the grand jury, a motion for permission to examine the names in the jury box is addressed to the discretion of the trial judge, and no abuse of discretion is shown in the denial of such a motion where there was evidence before the court that the names in the jury box contained no racial designation and defendants made no showing that they could produce a witness who would readily determine the race of the persons whose names appeared therein, and where even with such a witness an examination of the names in the jury box and a determination of the race of each would protract the hearing for many days.

**8. Arrest and Bail § 6—**

An attempted arrest without a warrant by an officer exceeding his lawful authority may be resisted as in self-defense, and the person resisting cannot be convicted under G.S. 14-223 of the offense of resisting an officer engaged in the discharge of his duties.

**9. Same—**

A person may not resist an arrest by an officer acting under authority of a court process which is sufficient on its face to show its purpose, even though the process may be defective or irregular in some respect.

**10. Same—**

Where defendants resisted an attempt by the sheriff to serve upon one of them a capias issued by the clerk of a recorder's court having jurisdiction to issue such process and directing the sheriff to arrest the named defendant, the sheriff having informed defendants that he had the capias and intended to serve it, and the sheriff's identity and official position being known to defendants, the defendants are guilty of resisting an officer engaged in the discharge of his duties in violation of G.S. 14-223, notwithstanding the capias may be invalid.

APPEAL by defendants from *Morris, E.J.,* October 1967 Mixed Session of PAMLICO Superior Court.

The defendant Bertha Mae Wright was indicted in Case No. 504 by the Grand Jury of Pamlico County under a bill of indictment, proper in form, charging her with the crime of willfully and unlawfully resisting a public officer, to wit: The Sheriff of Pamlico County, while he was attempting to discharge a duty of his office, namely, executing a *capias* issued by the Clerk of the Recorder's

Court of Pamlico County for the arrest of the said Bertha Mae Wright. The remaining defendants were indicted in Case No. 513 for the same offense. In apt time prior to entering pleas, the defendants in both cases moved to quash the bills of indictment on the grounds that Negroes had been systematically excluded from the Grand Jury which had returned said indictments. By consent the cases were consolidated for purposes of hearing the motions to quash. At the request of defendants the court entered an order directing that subpœnas be issued for the chairman, the clerk, and each member of the Board of County Commissioners of Pamlico County, directing them to appear before him and to produce certain appropriate records to be examined concerning the manner of selecting jurors in Pamlico County. An extensive hearing was conducted at which these officials and other persons, including members of former boards of county commissioners, the former sheriff, the chairman of the Board of Elections of Pamlico County, and the clerical workers who had actually copied the names of jurors from the tax lists and from the voter registration books, appeared and were examined as witnesses. In the course of the hearing it was stipulated by counsel for defendants and the solicitor that according to the 1960 census there was in that year a total of 5,301 persons 21 years of age and older in Pamlico County, of whom 3,708 were white and 1,593 were nonwhite. On a percentage basis there were 69.94 percent white and 30.05 percent nonwhite persons 21 years of age and older in Pamlico County in 1960. At the conclusion of the hearing, the court entered an order making the following findings of fact:

"1. That each Bill of Indictment referred to above charges the defendants with resisting Robert A. Whorton, Sheriff, while attempting to make a lawful arrest in violation of the General Statutes of North Carolina.

"2. That Pamlico County is a rural county of small size with few small incorporated towns.

"3. That for the year 1965 there was a total of 4,632 taxpayers in the county, 3,511 were of the white race and 1,121 were of the Negro race; that the percentage of white taxpayers was for said years 75.798 (%) and the percentage of Negro taxpayers for said year was 24.201 (%).

"4. That there are five (5) townships in Pamlico. In Number 1 township there are 957 white taxpayers and 81 Negro taxpayers; in Number 2 township there are 485 white taxpayers and 202 Negro taxpayers; in Number 3 township there are 771 white taxpayers and 481 Negro taxpayers; that in Number 4

township there are 437 white taxpayers and no Negro taxpayers; in Number 5 township there are 861 white taxpayers and 352 Negro taxpayers.

"5. That the jury list for Pamlico County was revised in 1963 by the then Board of County Commissioners and that the revision of the said jury list at that time was accomplished by the Clerk of the Board of County Commissioners at the direction of the said Board of Commissioners by said Clerk furnishing to the Board a list of names of both white and Negro citizens from which list the Board of Commissioners, without regard to race or color compiled the jury list and caused the names of such persons whom the Board of Commissioners found to be competent to serve as jurors, typed upon small scrolls of paper without any indicia as to race or color and caused said names or scrolls bearing said names to be placed in the jury box all in accordance with Chapter 9 of the General Statutes of North Carolina. It being found as a fact that the principal source of information for said list was obtained from the tax scrolls of Pamlico County.

"6. The jury list of Pamlico County was again revised in 1966 and the Court finds that the Board of County Commissioners directed the Sheriff along with the Clerk of the Board of Commissioners or the deputy or the assistant Register of Deeds to compile a list of eligible jurors and submit said list to said Board for approval. The Court finds from the evidence that the Board of Commissioners desired to have more women in the jury box and authorized and directed the Sheriff who had the tax scrolls in his possession to have the list made from the tax scrolls and from the Voter Registration Books and to submit such list to the Board of Commissioners for its approval or rejection; that some of the names submitted, the exact number not reflected by the evidence, were discarded by the Board of Commissioners due to persons being deceased or physical or mental infirmities, non-residents in the County and not of sufficient good moral character, and that the Board of Commissioners caused a total of 1,014 scrolls bearing the names of eligible jurors to be placed in the jury box; that said list of 1,014 persons was selected without reference to race or color and that no indicia appears on any scroll of any nature or description that would indicate in any manner the race of any person whose name the scroll bears; that the list from which said jury list was made or copied was made by Mrs. Robert A. Whorton and Mrs. Ida MacCotter, Assistant Register of Deeds,

STATE *v.* WRIGHT.

and who in so doing acted for the Register of Deeds who is *ex officio* Clerk of the Board of County Commissioners. That the actual selection of the jury list was made by the Board of County Commissioners without reference to race or color and in substantial accordance with Chapter 9 of the General Statutes of North Carolina.

"7. The Court finds as a fact that the tax scrolls of Pamlico County showed the white taxpayers in the front of the scroll or tax book and the Negroes in the back portion of said each book and said scroll indicated whether the taxpayer was white or Negro. The Court further finds that the Voter Registration Book shows the name of the voter, first, last and middle, the party he or she affiliated, the sex, the race, whether it was white or Negro, the age, the address, the place of birth of the voter and a space for the notation of change of party affiliation, that to that extent the person or persons making up the tax list would have benefit of the knowledge of the race of the proposed juror.

"8. The Court finds that at each term of Superior Court of Pamlico County for the trial of criminal cases over a period of ten years from this date with the exception of the August Term, 1957, and the August Term of 1960, the Grand Juries of each other Term had one to three members of the Negro race who served as Grand Jurors. That at the January Term, 1967, there were three members of the Negro race upon the Grand Jury. That at the April Term, 1967, there was one possibly two members of the Grand Jury who were members of the Negro race.

"9. The Court further finds as a fact and does take judicial notice of the fact that at least two members of the Negro race have served as jurors this week and that on Wednesday a.m. the undersigned at the request of one of them for good and sufficient cause shown excused him for the remainder of the Term.

"10. The Court further finds as a fact that the present and former Board of Commissioners of the County of Pamlico have not systematically excluded members of the Negro race from the jury. list of Pamlico County; that the scrolls bearing the names of eligible jurors now in the jury box bear no indicia of any kind or nature or description to identify such person as white or Negro."

Based upon the foregoing findings of fact, the court concluded

as a matter of law that the applicable statutory provisions respecting the qualification, selection, listing, drawing and attendance of jurors was fair and non-discriminatory and meets all constitutional requirements; that the use of tax rolls and voter registration books in making up a jury list was not in itself discriminatory; that the Board of County Commissioners of Pamlico County in preparation of the jury list had complied with the provisions of Chapter 9 of the General Statutes; and that the defendants were not entitled to quash the bills of indictment against them. Accordingly, the court denied defendants' motions to quash, to which action defendants duly noted their exceptions.

Prior to entering upon the trial defendants also moved for a change of venue, which motion was denied, but the court in its discretion ordered that trial jurors be drawn from Pitt County. The cases were consolidated for trial before a jury so drawn from Pitt County. All defendants pleaded not guilty. The jury returned verdicts of guilty as charged as to each defendant and from judgments entered thereon, the defendants appealed.

*T. W. Bruton, Attorney General, and Ralph Moody, Deputy Attorney General, for the State.*

*John Harmon, J. LeVonne Chambers, Romallus O. Murphy, and James Lanning for defendant appellants.*

PARKER, J. Defendants' first assignment of error is to the action of the trial court in denying their motions to quash the bills of indictment against them because of racial discrimination in the composition of the Grand Jury which indicted them. A similar question was considered by the Supreme Court of North Carolina in the recent case of *State v. Yoes,* 271 N.C. 616, 157 S.E. 2d 386. In that case Justice Lake, speaking for the Court in a thorough and scholarly opinion, said:

> "A Negro, moving to quash a bill of indictment on the ground that the grand jury, which returned it was unlawful, because of discrimination against Negroes in its selection, must prove affirmatively that qualified Negroes were intentionally excluded from the grand jury because of their race. (Citing cases.) This, however, may be shown by circumstantial evidence. Neither a showing that, over a substantial period, in a county with a relatively large Negro population only a few Negroes had served on juries, nor a showing that the race of the persons whose names appeared on scrolls in the jury box was designated on such scrolls, is conclusive proof of arbitrary and systematic exclusion

of Negroes from the grand jury which indicted the defendant. A showing of these circumstances does, however, constitute a *prima facie* showing of the discrimination forbidden by the law of this State. Such *prima facie* showing casts upon the State the burden to go forward with evidence sufficient to overcome it. (Citing cases.)"

In the cases before us, defendants contend they have carried the burden of showing a systematic exclusion of qualified Negroes from the Grand Jury which indicted them by presenting evidence of a statistical disparity between the ratio of the races in the adult population of Pamlico County as compared with the ratio of the races in the list of persons serving on grand juries in said county over the past ten years. They point to the evidence that approximately 30 percent of the adult population (according to the 1960 census), approximately 24 percent of the listed taxpayers (according to 1965 tax records), and approximately 20 percent of registered voters of Pamlico County, were colored. They compare these ratios with the ratios of Negroes serving on grand juries in Pamlico County over the past ten years, which was 16.6 percent when three Negroes served, ranging down to .055 percent when only one Negro served, and zero on the two occasions, one in 1957 and one in 1960, when no Negro served. They contend that this statistical disparity, when coupled with the fact that the list of prospective jurors was prepared from the taxpayer lists which were kept segregated by races and from the voter registration lists on which the race of each voter was indicated, established a *prima facie* case of unlawful discrimination in the selection of jurors which shifted the burden of proof to the State to rebut. Without deciding the question of whether the showing here made by defendants was sufficient to establish à *prima facie* case (compare *Jones v. Georgia*, 389 U.S. 24, 19 L. ed. 2d 25, 88 S. Ct. 4; *Whitus v. Georgia*, 385 U.S. 545, 17 L. ed. 2d 599, 87 S. Ct. 643), we hold that even should this be conceded there was here sufficient evidence produced by defendants' own witnesses that Negroes were not systematically excluded from the Grand Jury which indicted the defendants to rebut a *prima facie* showing to the contrary and to support the trial court's finding of fact that members of the Negro race were not so excluded.

It is well established that the mere denial by the officials charged with the duty of listing, selecting and summoning jurors that there was any intentional, arbitrary or systematic discrimination because of race, is not sufficient to overcome a *prima facie* case to the contrary. *State v. Wilson*, 262 N.C. 419, 137 S.E. 2d 109. Nor is such a *prima facie* case rebutted by reliance upon a presumption that public

officers are presumed to have discharged their sworn official duties. *Jones v. Georgia, supra.* "To overcome such *prima facie* case, there must be a showing by competent evidence that the institution and management of the jury system of the county is not in fact discriminatory. And if there is contradictory and conflicting evidence, the trial judge must make findings as to all material facts." *State v. Wilson, supra.* In the cases before us the trial judge has made full findings as to all material facts. These findings are supported by competent evidence introduced by the defendants themselves. Included in this evidence was the testimony of Mrs. Lennie Whorton, one of the clerks who participated in the preparation of the list of names to be submitted to the county commissioners to be used as jurors. For this purpose the tax records and the registration books were used. Mrs. Whorton testified:

"I would say we made an attempt to include from the list we were preparing approximately one-fourth Negro persons, because I am sure we got that many, if not more. I don't know the number, we didn't keep any record. We just tried to get equal as best we knew how. I would say there was approximately three hundred names of Negro persons on the list we prepared. That would be roughly one-fourth of twelve hundred."

Other testimony submitted by defendants showed that the list prepared in 1966 contained approximately 1200 names, that there was no indication on this list as to color or race, that from this list the Board of County Commissioners selected 1,014 names which were placed in the jury box as jurors of Pamlico County. The chairman of the Board of County Commissioners testified:

"From the larger list, the list that was handed to me, we did exclude from that list people that we knew were dead. We also excluded from that list of people, persons who were not of good moral character. We also excluded from that list people whom we felt did not have sufficient intelligence to serve as jurors. That was the only ones that we laid aside. From the list that was handed to me and on the chosen names of the 1,014, there was not a way to tell or no designation as to color or race. Not in the least degree!"

Other members of the Board of County Commissioners also called as witnesses by defendants testified that they had not eliminated any name from the list of jurors because of race. When, as here, the defendants' own witnesses furnish evidence sufficient to rebut a *prima facie* showing of unlawful discrimination in the composition of the Grand Jury which had indicted them, it is not required that

the State then go forward and produce independent evidence to the same effect. Here, the defendants had already called to the stand as their own witnesses practically all of the officials and clerical workers who had had any connection with the preparation of the lists and the selection of names of persons to be placed in the jury box. It would be ridiculous to require the State to recall to the stand these same witnesses simply for the purpose of testifying a second time to what had already been said. The findings of fact made by the trial court, when supported by competent evidence whether produced by the defendants or by the State, are conclusive on appeal and will not be disturbed unless so grossly wrong as to amount to an infraction of constitutional guaranties. *State v. Wilson, supra.* We find here no error in the trial court's denial of defendants' motions to quash the indictments against them.

Defendants' second assignment of error is directed to the trial court's action in denying defendants, during the hearing on their motion to quash by reason of racial discrimination, the right to inspect the jury box from which names of prospective jurors were drawn. In this connection, there was evidence before the court that the names as they appeared in the jury box were on slips of paper on which there was no designation of any kind which would indicate the color or race of the person whose name appeared thereon. The Register of Deeds, who also served as County Accountant and Tax Supervisor of Pamlico County and as Clerk to the Board of County Commissioners, testified:

"There was no designation of any kind whatsoever on those slips in the jury box which would indicate any color or any race. There was no designation on the list that was turned in to the Commissioners to indicate race or color. When the jury panel was drawn from the box, I was present. And the list was drawn by a child as the statute so required, under school age."

The defendants made no showing that, had they been permitted to examine the slips of paper with the names of jurors in the jury box, they would have been able to produce any witness who could readily determine the race of the persons whose names appeared thereon. Without such a witness, examination of the jury box would have availed defendants nothing. Even with such a witness or witnesses available, examination of the entire 1,014 names in the jury box and determination of the race of each would have consumed days of time in the hearing on the motions to quash. Throughout the entire hearing the trial court was most meticulous in protecting defendants' right to develop and fully present their evidence. He

ordered subpœnas issued for all witnesses and production of all pertinent records desired by them. The hearing on these motions had already consumed two days of the court's time. The granting or denial of defendants' motion to be permitted to examine the names in the jury box was within the discretion of the trial court, and there was no abuse of discretion in denying this motion, particularly since this would have protracted the hearing for many additional days.

Defendants' third assignment of error relates to the trial court's refusal to quash the *capias* which the Sheriff of Pamlico County was attempting to serve upon the defendant Bertha Mae Wright at the time she and the other defendants resisted him, giving rise to the present cases against them. This *capias* was issued by the Clerk of the Recorder's Court of Pamlico County, was issued in the name of the State of North Carolina, was directed to the Sheriff of Pamlico County, and commanded him to "take the body of Bertha Wright (if to be found in your county) and her safely keep, so that you have her before his Honor, the Judge of our Recorder's Court, at a court to be held for the County of Pamlico, at the courthouse in Bayboro, N. C., on the 9th day of December, 1966, next, then and there to answer the charge of the State against her on an indictment for failure to comply with a court order." Defendants contend that there was in fact no indictment then pending against Bertha Wright, no valid judgment or court order directed against her, and that the *capias* on its face is void since there is no such indictable offense in North Carolina as "failure to comply with a court order." But if after careful judicial inquiry it could be determined that the *capias* was void, this did not justify the defendants in resisting the officers when they attempted to serve it.

When an officer attempts to make an arrest without a warrant and in so doing exceeds his lawful authority, he may be resisted as in self-defense and in such case the person resisting cannot be convicted under G.S. 14-223 of the offense of resisting an officer engaged in the discharge of his duties. *State v. Mobley,* 240 N.C. 476, 83 S.E. 2d 100. But when an officer is acting under authority of process of a court, a different situation exists. In such case if the writ is sufficient on its face to show its purpose, even though it may be defective or irregular in some respect, yet the officer is protected. "It would be monstrous to lay down a different rule. It would put in jeopardy the life of every officer in the land. It never could be intended that they should determine, at their peril, the strict legal sufficiency of every precept placed in their hands." *State v. Jones,* 88 N.C. 671, quoting from Judge Lumpkin in *Boyd's* case, 17 Ga. 194.

In the cases before us the *capias* was issued by the Clerk of the

Recorder's Court of Pamlico County, a proper officer of a court having jurisdiction to issue such process. It was directed to the Sheriff of the county and commanded him to arrest the defendant, Bertha Wright. At the time the Sheriff attempted to carry out its mandate he had been Sheriff of the county for nearly 30 years and his identity and official position were known to defendants. There was evidence that he informed them that he had a *capias* in his possession for Bertha Mae Wright and that he intended to serve it. Even if it be shown that the *capias* was for some reason invalid, defendants mistook their remedy when they resorted to violence in resisting. The defendant Wright should have submitted to the arrest and raised the question of the validity of the process in an orderly way in a court having power to make a judicial determination of the matter. When defendants, instead of following the orderly processes of the law, attempted to take matters into their own hands and to resolve the question by violence, they violated G.S. 14-223.

We have carefully reviewed defendant's other assignments of error and find them to be without merit.

In the trial we find

No error.

MALLARD, C.J., and BROCK, J., concur.