VICTOR HAMILTON MESSICK v. CATAWBA COUNTY, NORTH CAROLINA; DAVID HUFFMAN, Individually and as Sheriff of Catawba County; LAVERNE BOLICK, Individually and as an Officer of the Catawba County Sheriff's Department; K. B. CROUSE, Individually and as an Officer in the Catawba County Sheriff's Department; RICHARD HARWELL, Acting as Chairman of the Board of Commissioners of Catawba County; ROBERT HIBBITTS, as Commissioner of Catawba County; GRETCHEN PEED, as Commissioner of Catawba County; EDDIE HUFFMAN, as Commissioner of Catawba County; DAVID L. STEWART, as Commissioner of Catawba County; THOMAS LUNDY, as Commissioner of Catawba County

No. 9225SC597

(Filed 6 July 1993)

1. **Constitutional Law § 86 (NCI4th)— § 1983 claim—day care owner arrested for sexual abuse—action against county officials in official capacities**

   Summary judgment was appropriate on a claim under 42 U.S.C. § 1983 against Catawba County, its Commissioners, the sheriff, and law enforcement officers in their official capacities where plaintiff was arrested for sexually abusing children at his day care centers, a jury returned a not guilty verdict on all counts at the first trial and the district attorney's office dropped the remaining charges, and plaintiff filed a complaint including a § 1983 claim for money damages. Plaintiff is not entitled to relief pursuant to § 1983 against the County, the Commissioners, or the sheriff and the officers sued in their official capacity because he sought monetary damages.

   **Am Jur 2d, Civil Rights §§ 3, 4, 16, 19.**

2. **Trespass § 2 (NCI3d)— intentional infliction of emotional distress—plaintiff arrested for sexual abuse of children—County and Commissioners immune**

   Summary judgment was properly granted for defendant Catawba County and its Commissioners in their official capacities on a claim for intentional infliction of emotional distress arising from plaintiff's arrest for sexually abusing children at his day care centers. Police services are ordinarily considered governmental functions, the performance of which does not subject a municipality to liability and plaintiff does not contend and the record does not indicate that Catawba County has purchased liability insurance or otherwise consented to suit against it. Additionally, when public officials are sued in their official

capacities, the action is against the state for purposes of applying the sovereign immunity doctrine.

**Am Jur 2d, Constitutional Law § 282; Fright, Shock, and Mental Disturbance §§ 1, 2, 4.**

3. **Sheriffs and Constables § 4 (NCI4th) — plaintiff arrested for sexually abusing child — sheriff not immune — surety not joined as party**

A sheriff and other officers sued in their official capacities after plaintiff was arrested, tried, and acquitted for sexually molesting children in his day care centers were not immune because the statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protective embrace of governmental immunity where the surety is joined as a party to the action. The fact that the surety was not named as a party in this action would be corrected easily by amendment to the complaint; however, such a correction is not necessary here because summary judgment for the officers was properly granted on the facts.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 158, 159, 181-183, 185, 187, 188.**

4. **Sheriffs and Constables § 4 (NCI3d) — plaintiff arrested for sexually abusing children — negligence action against sheriff and officers — summary judgment for defendants**

The trial court properly granted summary judgment for defendants in their official capacities where plaintiff was arrested, tried, and acquitted for sexually molesting children in his day care centers and brought an action which included a claim for negligent investigation. The evidence in depositions demonstrates that the officers proceeded with the arrest as they were trained to do and were in no way negligent in carrying out their duties.

**Am Jur 2d, Sheriffs, Police, and Constables § 90.**

5. **Malicious Prosecution § 19 (NCI4th) — arrest for sexually abusing children — probable cause — summary judgment for defendants**

The trial court properly granted summary judgment for defendant officers in their official capacities on a malicious prosecution claim where plaintiff was arrested, tried, and ac-

quitted for sexually abusing children at his day care centers and, based upon facts illustrated by the deposition testimony, probable cause did exist to arrest plaintiff.

**Am Jur 2d, Malicious Prosecution §§ 159, 161, 169.**

6. **Trespass § 2 (NCI3d) — arrest for sexually abusing children — intentional infliction of emotional distress — summary judgment for defendants**

The trial court properly granted summary judgment for defendant officers in their official capacities on an intentional infliction of emotional distress claim where plaintiff was arrested, tried, and acquitted for sexually abusing children in his day care centers. Nothing in the deposition testimony indicates that there was anything extreme or outrageous about the officers' conduct during the course of the investigation, nor is there anything to suggest that the officers intended to inflict severe emotional distress upon plaintiff.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 1, 2, 4.**

7. **Constitutional Law § 86 (NCI4th) — § 1983 claim — arrest for sexually abusing children — claims against sheriff and officers in individual capacities — summary judgment for defendants**

The trial court properly granted summary judgment for a sheriff and officers in their individual capacities on a § 1983 claim arising from plaintiff's arrest for sexually abusing children in his day care centers where plaintiff contended that the sheriff's department notifies the media when a well known citizen is arrested, but the deposition testimony of the officers illustrates that while both of them were aware that the news media used police scanners to monitor the activity of the sheriff's department, as well as the activity of such other entities as the rescue squad, neither officer was aware of anyone directly contacting the media to be present when plaintiff was brought to the police station on the day of his arrest. Plaintiff's unsupported allegations to the contrary cannot work to create a genuine issue of material fact as to the policy, practice and custom in the Catawba County Sheriff's Office.

**Am Jur 2d, Civil Rights §§ 3, 4, 16, 20.**

8. **Sheriffs and Constables § 4 (NCI3d)— individual capacity of sheriff—public officer—immunity from suit**

A sheriff was immune from suit in his individual capacity on plaintiff's causes of action for negligence and negligent infliction of emotional distress arising from plaintiff's arrest for sexually abusing children in his day care centers. Public officers are immune from suit for mere negligence and our case law recognizes the position of sheriff as being that of a public officer who exercises discretionary power in the performance of his duties.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 158, 159.**

9. **Sheriffs and Constables § 2 (NCI3d)— deputies—public officers—immune from suit in their individual capacities**

The two deputies who arrested plaintiff for sexually abusing children in his day care centers were performing discretionary duties and are public officers entitled to immunity from negligence claims.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 158, 159.**

Appeal by plaintiff from Order entered 27 February 1992 by Judge Forrest A. Ferrell in Catawba County Superior Court. Heard in the Court of Appeals 11 May 1993.

*Metcalf, Vrsecky & Beal, by Christopher L. Beal, for plaintiff-appellant.*

*Womble, Carlyle, Sandridge & Rice, by Dewey W. Wells and Nathanael K. Pendley, for defendants-appellees.*

WYNN, Judge.

On 3 June 1988, the Catawba County Sheriff's Department received information from the parents of C.M., a five-year-old child who regularly attended one of the plaintiff's seven day-care centers, regarding the possible sexual abuse of C.M. by the plaintiff. The investigation of these allegations was assigned to Detective Laverne Bolick, who had received a week of special training regarding dealing with juveniles and had recently completed a special one week Advanced Master's course in Child Sexual Abuse investigation. Later, Detective K.B. Crouse was also assigned to the investigation.

On the day the abuse was reported, Detective Bolick interviewed C.M. outside the presence of her parents using techniques learned in a Child Sexual Abuse investigation course. A second interview was conducted approximately two days later. Present at the second interview were Detectives Bolick and Crouse, the child's mother, Assistant District Attorney Jay Myer, and Mary Jane Francois, also from the District Attorney's office.

Based on the two interviews and consultations with Assistant District Attorney Jay Myer, Detectives Bolick and Crouse sought a warrant for the plaintiff's arrest. That warrant was issued by Magistrate Grace M. Killian on 28 April 1988, and on 8 June 1988 the plaintiff was arrested and charged with taking sexual liberties with a child pursuant to N.C. Gen. Stat. § 14-202.1 and first degree sexual offense of a minor child pursuant to N.C. Gen. Stat. § 14-27.4. The news media had gained knowledge of the plaintiff's arrest before his arrival at the police station and, consequently, numerous television cameras and reporters were present when the plaintiff arrived. The plaintiff spent one night in jail before he was able to post bond.

On 12 June 1988, the Sheriff's office received information regarding D.D., a second minor child approximately three years old, who had allegedly been sexually abused by the plaintiff. D.D. was interviewed on 13 June 1988 by Judy Vaughn of the Department of Social Services in the presence of Detectives Bolick and Crouse, the child's mother, and Assistant District Attorney Jay Myer.

On 16 June 1988, a second warrant was issued for the plaintiff's arrest in connection with the second allegation of abuse charging him with taking indecent liberties with a minor pursuant to N.C. Gen. Stat. § 14-202.1, first degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4, and first degree kidnapping pursuant to N.C. Gen. Stat. § 14-39.

True bills of indictment were returned by a Catawba County grand jury on 7 July 1988 against the plaintiff in connection with the C.M. case on three counts of first degree sexual abuse and one count of taking indecent liberties with a minor. That same grand jury also returned true bills of indictment charging the plaintiff in connection with the abuse of D.D.

The case involving C.M. proceeded to trial in Watauga County, where it was removed due to the degree of publicity the case

had received in Catawba County. On 15 March 1989 the jury returned a verdict of "not guilty" on all counts of sexual abuse regarding the minor child C.M. On 30 August 1989, the District Attorney's office dropped all charges against the defendant pertaining to the minor child D.D.

The plaintiff filed a Complaint against the defendants on 26 February 1991 alleging a cause of action for the violation of his civil rights under 42 U.S.C. § 1983, as well as causes of action pursuant to state law alleging malicious prosecution, negligence in investigation, negligent infliction of emotional distress, and intentional infliction of emotional distress. The defendants moved for summary judgment and, following a hearing on the motion in Catawba County Superior Court, an Order of summary judgment was entered in favor of the defendants on 21 February 1992. From that Order, the plaintiff appeals.

By his sole assignment of error, the plaintiff alleges that the trial court erred in entering summary judgment in favor of the defendants. In support of this contention the plaintiff argues that there are genuine issues of material fact with regard to both his federal and state claims. We disagree.

It is well-established that summary judgment is proper where there is no genuine issue of material fact so that one party is entitled to judgment as a matter of law. Moreover, summary judgment is appropriate if one party cannot overcome an affirmative defense which would work to bar his claim. *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E.2d 325, 335 (1981). The burden of establishing that there is no genuine issue of material fact lies with the movant, who can meet the burden in one of two ways: 1) Proving that an essential element of the opposing party's claim is nonexistent; or 2) Showing through discovery that the opposing party cannot produce evidence sufficient to support an essential element of his claim nor sufficient to surmount an affirmative defense to his claim. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 62-63, 414 S.E.2d 339, 342 (1992) (citing, *inter alia, Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) ); *see also Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) ("in order to overcome defendant's motion for summary judgment, plaintiff must have forecast sufficient evidence of all essential elements"). Once the moving party meets its burden,

the nonmovant must challenge the motion by producing a forecast of evidence illustrating that a *prima facie* case can be made out at trial. *Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342. Where the party moving for summary judgment supports his motion "by competent evidentiary matter showing the facts to be contrary to that alleged in the pleadings," the non-moving party cannot rely on "[u]nsupported allegations in the pleadings . . . to create a genuine issue as to a material fact." *Gudger v. Transitional Furniture, Inc.*, 30 N.C. App. 387, 389, 226 S.E.2d 835, 837 (1976). *See also Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342.

We examine each of the plaintiff's claims below and determine that summary judgment was appropriate on all claims as against all of the defendants.

## I. The Claims Against the County, the Commissioners, and the Sheriff and Officers Sued in Their Official Capacities

### A. Federal Claim: 42 U.S.C. § 1983

[1]   The plaintiff argues that his civil rights were violated pursuant to 42 U.S.C. § 1983 and he, therefore, is entitled to recover monetary damages from the defendants. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (1981). Our Supreme Court has declared, however, that "when an action is brought under section 1983 in state court against the State, its agencies, and/or its officials acting in their official capacity, neither a State nor its officials acting in their official capacities are 'persons' under section 1983 when the remedy sought is monetary damages." *Corum v. University of North Carolina*, 330 N.C. 761, 771, 413 S.E.2d 276, 282-83 (1992). *See also Faulkenbury v. Teachers and State Employees Retirement System*, 108 N.C. App. 357, 366, 424 S.E.2d 420, 424 (1993) (when the defendants in a 1983 action are the state and its officers, they are not "persons" pursuant to the statute and cannot be sued where the remedy sought is monetary damages). Because the plaintiff in the instant case seeks monetary damages, he is not entitled to relief pursuant

to section 1983 against the County, the Commissioners, or the sheriff and the officers sued in their official capacity.

### B. The State Claims: Negligence, Negligent Infliction of Emotional Distress, Malicious Prosecution, and Intentional Infliction of Emotional Distress

[2] As a general rule, the doctrine of governmental, or sovereign, immunity bars actions against, *inter alia*, the state, its counties, and its public officials sued in their official capacity. *Whitaker v. Clark*, 109 N.C. App. 379, 381, 427 S.E.2d 142, 143-44 (1993); *EEE-ZZZ Lay Drain Co. v. North Carolina Dep't Hum. Res.*, 108 N.C. App. 24, 27, 422 S.E.2d 338, 340 (1992); *Robinson v. Nash County*, 43 N.C. App. 33, 35, 257 S.E.2d 679, 680 (1979). This doctrine applies where the entity sued is being sued for the performance of a governmental, rather than a proprietary, function. *Robinson*, 43 N.C. App. at 35, 257 S.E.2d at 680. It is inapplicable, however, where the state has consented to suit or has waived its immunity through the purchase of liability insurance. *EEE-ZZZ Lay Drain*, 108 N.C. App. at 27, 422 S.E.2d at 340. Absent consent or waiver, the immunity provided by the doctrine is absolute and unqualified. *See* 72 Am. Jur. 2d *States, Territories and Dependencies* § 100 (1974) (scope of immunity generally).

Police services are ordinarily considered governmental functions, the performance of which does not subject a municipality to liability. *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5, *disc. rev. denied*, 322 N.C. 834, 371 S.E.2d 275 (1988), *appeal after remand*, 102 N.C. App. 650, 403 S.E.2d 577, *disc. rev. denied*, 329 N.C. 786, 408 S.E.2d 517 (1991). Moreover plaintiff does not contend, nor does anything in the record indicate, that Catawba County has purchased liability insurance or otherwise consented to suit against it. Therefore, the plaintiff's action against the county is barred by governmental immunity. Additionally, when public officials are sued in their official capacities, "the action is one against the state for the purposes of applying the doctrine of sovereign immunity." *Whitaker*, 109 N.C. App. at 381, 427 S.E.2d at 143-44 (citing *Corum v. University of North Carolina*, 97 N.C. App. 527, 389 S.E.2d 596 (1990), *aff'd in part, rev'd in part, and remanded*, 330 N.C. 761, 413 S.E.2d 276 (1992)). Clearly, the Commissioners, as sued in their official capacities, are immune from the plaintiff's suit. Summary judgment, thus, was proper with respect to the County and the Commissioners.

[3]  Governmental immunity, however, does not preclude an action against the sheriff and the officers sued in their official capacities. The legislature, to whom the courts of this state defer in determining when a state or its agents may be sued, *Slade v. Vernon*, 110 N.C. App. 422, 429 S.E.2d 744 (1993), has provided that a suit may be maintained against a sheriff and other officers.

> Every person injured by the neglect, misconduct, or misbehavior in office of any . . . sheriff . . . or other officer, may institute a suit or suits against said officer or any of them and their sureties upon their respective bonds for the due performance of their duties in office in the name of the State, without any assignment thereof . . . .

N.C. Gen. Stat. § 58-76-5 (1991). The statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protective embrace of governmental immunity, but only where the surety is joined as a party to the action. (*See Slade*, 110 N.C. App. at 429-30, 429 S.E.2d at 748 (Greene, J., concurring).) The fact that the surety is not named as a party in the present action, however, is easily corrected by amendment to the complaint. Such a correction, however, is not necessary in the present case because we find that, even if the sheriff and the officers are not entitled to governmental immunity, summary judgment on the state law claims in their favor is still proper.

[4]  The depositions submitted by the defendants in support of their summary judgment motion convey the course of events surrounding the investigation of the charges and the ultimate arrest of Mr. Messick from the point of view of the two officers who were present throughout the process. Their testimony indicates that they interviewed the children involved, that Detective Bolick had taken courses regarding interviewing children, and that they had consulted with people in the District Attorney's office, re-interviewed C.M. in the presence of an assistant district attorney, and only then sought a warrant for Mr. Messick's arrest. The evidence in the depositions demonstrates that the officers proceeded with the arrest as they were trained to do and were in no way negligent in carrying out their duties. The plaintiff has presented no forecast of evidence to the contrary, and cannot rely on the unverified allegations contained in his complaint alleging that Detective Bolick was not properly trained and that the officers conducted an inadequate investigation.

**[5]** Likewise, the plaintiff has presented no forecast of evidence that the officers acted with malice and without probable cause to arrest the plaintiff and, therefore, summary judgment was proper on the charge of malicious prosecution. In order to prevail on a charge of malicious prosecution, "the plaintiff must show: 1) that the defendant initiated earlier proceedings; 2) that he did so maliciously and without probable cause; and 3) that the plaintiff prevailed in the earlier proceedings." *Fowler v. Valencourt*, 108 N.C. App. 106, 111, 423 S.E.2d 785, 788 (1992), *disc. rev. allowed*, 333 N.C. 344, 426 S.E.2d 705 (1993). The first and third elements are unquestionably present, and, because malice is inferred from the lack of probable cause, the only issue which must be resolved in terms of the summary judgment standard is probable cause. *See id.* In causes of action for malicious prosecution, probable cause is determined by examining whether the facts and circumstances known to the defendants are such that they would induce a reasonable man to commence prosecution. *Fowler*, 108 N.C. App. at 112, 423 S.E.2d at 788. We have examined the deposition testimony of the two officers and determine that, based on the facts illustrated by their testimony, probable cause did exist to arrest Mr. Messick. Because the plaintiff has presented no forecast of evidence to the contrary, summary judgment on the malicious prosecution claim was proper.

**[6]** Finally, with respect to the claim for intentional infliction of emotional distress, the plaintiff has also failed to present a sufficient forecast of evidence to illustrate the necessary elements. The three elements constituting intentional infliction of emotional distress are "1) extreme and outrageous conduct by the defendant, 2) which is intended to and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). Nothing in the deposition testimony indicates that there was anything extreme or outrageous about the officers' conduct during the course of the investigation, nor is there anything to suggest that the officers intended to inflict severe emotional distress upon the plaintiff.

The plaintiff having failed to present a forecast of the evidence with respect to the elements of the state law claims sufficient to make out a *prima facie* case for trial, summary judgment was properly granted in favor of the defendants.

## II. Claims Against the Sheriff and the Officers Sued in Their Individual Capacities

### A. Federal Claim: 42 U.S.C. § 1983

**[7]** Without addressing whether the sheriff and the officers, in their individual capacities, are entitled to any immunity from a suit based on 42 U.S.C. § 1983, we find that summary judgment on that claim was properly granted in their favor. The plaintiff's theory in bringing this federal claim appears to be that the sheriff's department practices a custom of notifying the media when a well-known citizen is arrested in order for the department to receive wide publicity coverage, and that such a custom violates his constitutional rights. The deposition testimony of the two officers illustrates that while both of them were aware that the news media used police scanners to monitor the activity of the sheriff's department, as well as the activity of such other entities as the rescue squad, neither officer was aware of anybody directly contacting the media to be present when Mr. Messick was brought to the police station on the day of his arrest. The plaintiff's unsupported allegations in the complaint to the contrary cannot work to create a genuine issue of material fact as to the policy, practice and custom in the Catawba County Sheriff's Office with which the plaintiff takes issue.

### B. The State Claims: Negligence, Negligent Infliction of Emotional Distress, Malicious Prosecution, and Intentional Infliction of Emotional Distress

**[8]** Generally, the doctrine of public officer immunity precludes public officers from being sued in their individual capacity for mere negligence. "When a governmental worker is sued individually, or in his or her personal capacity, our courts distinguish between public employees and public officers in determining negligence liability." *Hare v. Butler*, 99 N.C. App. 693, 699, 394 S.E.2d 231, 236, *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 121 (1990). Public officers are immune from suit for mere negligence, but public employees are entitled to no such immunity. *Id.* at 700, 394 S.E.2d at 236.

A public officer is one whose position is created by either the state constitution or statutes. *Id.* Public officers are usually required to take an oath of office and are vested with discretionary power, which entails exercising "some portion of sovereign power" to carry out their duties. *EEE-ZZZ Lay Drain*, 108 N.C. App.

at 29, 422 S.E.2d at 341; *Hare,* 99 N.C. App. at 700, 394 S.E.2d at 236. By contrast, public employees are responsible for executing ministerial duties. While discretionary duties involve "personal deliberation, decision and judgment," ministerial duties are those which are "absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Hare,* 99 N.C. App. at 700, 394 S.E.2d at 236. Prior case law recognizes the position of sheriff as being that of a public officer who exercises discretionary power in the performance of his duties. *See, e.g., State ex rel. Williams v. Adams,* 25 N.C. App. 475, 213 S.E.2d 584, *remanded,* 288 N.C. 501, 219 S.E.2d 198 (1975); *State v. Wright,* 1 N.C. App. 479, 480, 162 S.E.2d 56, 57, *aff'd,* 274 N.C. 380, 163 S.E.2d 897 (1968). The office of sheriff is provided for by the North Carolina Constitution and the duties and obligations of the office are enumerated in the statutes. N.C. Const. art. VII, § 2; N.C. Gen. Stat. §§ 162-13 — 162-25 (1987 & Cum. Supp. 1992). Clearly, the sheriff in the instant case is immune from suit in his individual capacity from the plaintiff's causes of action in negligence and negligent infliction of emotional distress.

**[9]** The statutes also provide that the sheriff will appoint deputies, who have been recognized as public officers by our courts. *See, e.g., Blake v. Allen,* 221 N.C. 445, 449, 20 S.E.2d 552, 554 (1942); *State v. Jones,* 41 N.C. App. 189, 190, 254 S.E.2d 234, 235 (1979); *Cline v. Brown,* 24 N.C. App. 209, 215, 210 S.E.2d 446, 449 (1974), *cert denied,* 286 N.C. 412, 211 S.E.2d 793 (1975). Case law seems to indicate, however, that at least traditionally, deputies were deemed to perform ministerial duties and had no authority to perform discretionary duties. *See, e.g., Blake,* 221 N.C. at 449, 20 S.E.2d at 554 ("the position of a deputy sheriff is a public office, the appointment to which delegates to the deputy authority to perform only ministerial duties imposed upon the sheriff"). Yet, the more modern view of a deputy's work appears to be that he or she is vested with discretionary power much like the sheriff. *See, e.g., Slade v. Vernon,* 110 N.C. App. 422, 429 S.E.2d 744 (grouping the sheriff and the jailer together for the purpose of determining whether the two are subject to public official immunity). We conclude, therefore, that, at least as pertains to the investigation of charges and the arrest of Mr. Messick, Officers Bolick and Crouse were performing discretionary duties and are public officers entitled to immunity from the negligence claims as contemplated by the doctrine of public official immunity.

SPIVEY AND SELF v. HIGHVIEW FARMS

[110 N.C. App. 719 (1993)]

With regard to the other state law claims, we find that the sheriff and the officers are entitled to summary judgment in their individual capacities for the same reasons they are entitled to summary judgment in their official capacities.

For the foregoing reasons, the decision of the trial court is,

Affirmed.

Judges JOHNSON and GREENE concur.