DAPHNE BOYD, Plaintiff v. ROBESON COUNTY; HOWARD STRAWCUTTER, Medical Director of Jail Health Services at the Robeson County Detention Center, in his official and individual capacities; FERRISS LOCKLEAR, in his official and individual capacities; GLENN MAYNOR, Sheriff of Robeson County, in his official and individual capacities; RAYMOND WILLIAMS, Chief Jailer for the Robeson County Detention Center, in his individual and official capacities; TERRY HARRIS, Chief of Operations for the Robeson County Detention Center, in his individual and official capacities; SHARON BYRD, WANDA HUNT, JOANN WEST, BRENDA SANDERSON, SUSAN GREEN, ANNA SMITH, and FONDARIE LOCKLEAR, Detention Officers for the Robeson County Detention Center, in their individual and official capacities; and WESTERN SURETY COMPANY, a surety company for the Sheriff of Robeson County, Defendants

No. COA03-1222

(Filed 5 April 2005)

**1. Appeal and Error— appealability—interlocutory order—civil rights claim—sheriff as person—qualified immunity**

The question of whether a governmental entity is a "person" under 42 U.S.C.§ 1983 is analogous to the public duty doctrine and to claims of immunity and therefore involves a substantial right permitting an interlocutory appeal.

**2. Appeal and Error— appealability—denial of summary judgment—inability of County for sheriff and jail staff—not an immunity claim or substantial right**

A portion of defendants' appeal from the denial of summary judgment was dismissed as interlocutory where defendants argued that Robeson County could not be held liable for the negligence of its sheriff and other jail staff and that plaintiff failed to present sufficient evidence that the sheriff and detention officers were negligent in their official capacities. These arguments do not involve any claim of immunity and defendants have made no other showing as to how this aspect of the trial court's ruling affected a substantial right.

**3. Civil Rights— 42 U.S.C. § 1983—sheriff as person**

The trial court properly concluded that a sheriff in North Carolina is a "person" under 42 U.S.C. § 1983 and North Carolina sheriffs can be sued in their official capacities under that statute.

**4. Pleadings— detention officers—sued in individual and official capacities**

Detention officers were properly sued in both their individual and official capacities for negligence in obtaining medical care for an inmate. Whether a plaintiff's allegations relate to

**BOYD v. ROBESON CTY.**

[169 N.C. App. 460 (2005)]

actions outside the scope of defendant's official duties is relevant in determining immunity, but is not relevant to determining whether the defendant is being sued in his or her official or individual capacity.

**5. Civil Rights— 42 U.S.C.§ 1983—detention officers—failure to obtain medical aid—qualified immunity**

The trial court properly denied a motion by detention officers for summary judgment on a 42 U.S.C.§ 1983 claim on the issue of qualified immunity. The threshold inquiry for a court in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. A reasonable officer in 1998 would have had fair warning that ignoring an inmate's requests for medical care to address severe pain, vomiting, and nausea over two full days would violate clearly established constitutional law. The fact that plaintiff may have received some care when her requests for assistance were finally acknowledged does not relieve defendants from their responsibility.

**6. Appeal and Error— appealability—interlocutory order—sufficiency of evidence to support immunity**

The denial of a motion for summary judgment is an interlocutory order that generally cannot be the basis for an immediate appeal. Here, the argument that the trial court erred by determining that plaintiff had presented sufficient evidence of a constitutional violation by the individual defendants addresses the merits of plaintiff's claim rather than an immunity defense and this portion of the appeal is dismissed.

Appeal by defendants from order entered 30 June 2003 by Judge Jack A. Thompson in Robeson County Superior Court. Heard in the Court of Appeals 19 May 2004.

*Beaver, Holt, Sternlicht, Glazier, Britton, & Courie, P.A., by Richard B. Glazier, Rebecca J. Britton, and Joseph W. Osman, for plaintiff-appellee.*

*Sumrell, Sugg, Carmichael, Hicks & Hart, P.A., by Scott C. Hart, for defendants-appellants.*

GEER, Judge.

This appeal arises out of a five-day episode at the Robeson County Detention Center, during which, according to plaintiff Daphne

**BOYD v. ROBESON CTY.**

[169 N.C. App. 460 (2005)]

Boyd, she was denied adequate medical treatment for a ruptured appendix despite her constant complaints of pain and pleas for assistance. Defendants Sheriff Glenn Maynor and the individual detention officers appeal from the trial court's order denying their motions for partial summary judgment, contending primarily that (1) they are not "persons" amenable to suit under 42 U.S.C. § 1983 (2000) and (2) the trial court erred in failing to hold that plaintiff's § 1983 claims are barred by the doctrine of qualified immunity.

We hold that a North Carolina sheriff is a "person" subject to suit under 42 U.S.C. § 1983 and that defendants are not entitled to summary judgment based on their defense of qualified immunity when the evidence is viewed in the light most favorable to plaintiff, the non-moving party. We decline to reach defendants' remaining arguments because they are not properly the subject of an interlocutory appeal.

## Facts

The evidence, when viewed in the light most favorable to plaintiff, establishes the following facts. On 14 September 1998, plaintiff entered the Robeson County Detention Center to serve a 45-day sentence for felony worthless check convictions. On 24 October 1998, during the early morning hours, plaintiff began to suffer from nausea and "constant" abdominal pain. After notifying the officer on duty of her condition, plaintiff obtained and completed a sick call request slip. Approximately 30 minutes later, a detention officer escorted plaintiff to the Jail Health Service Clinic ("the clinic"), where a nurse gave plaintiff "something to drink" and sent plaintiff back to her cell.

Once in her cell, plaintiff vomited. Her pain became more intense and spread from her stomach, where it had previously concentrated, to the right side of her body. Plaintiff informed the detention officer and requested to visit the clinic once again. At 4:00 a.m., a detention officer took plaintiff back to the clinic where plaintiff vomited again. The nurse examined plaintiff, telephoned Dr. Ferris Locklear, the clinic physician, and administered a "shot for pain."

The next morning, 25 October 1998, plaintiff awoke and again experienced "agonizing pain" and nausea. Plaintiff gave a sick call request form to the detention officers. At some point that day, Dr. Locklear examined plaintiff. Plaintiff asked the doctor if the problem might be with her appendix, but he responded that she was suffering from a virus. When plaintiff asked to go to the hospital or see another

doctor, Dr. Locklear told her that inmates only go to the hospital for emergencies. Dr. Locklear treated plaintiff with Tylenol and she was returned to her cell. The doctor told plaintiff that he would see her the next day.

On the following day, 26 October 1998, plaintiff submitted another sick call request slip to a detention officer and reminded her that Dr. Locklear was supposed to re-examine her that day. The officer said she would give the doctor the slip. In 1998, it was the responsibility of the detention officers to deliver the sick call slips to the nurse. During the day, plaintiff's pain advanced to the left side of her abdomen and also began affecting her back. She continued to vomit and have diarrhea, with her nausea getting worse as the day went on. Throughout the day, each time a detention officer passed the window of her cell, plaintiff asked when the doctor would see her, explaining that she was still in tremendous pain. No one gave her any information or took her to the clinic. At one point, plaintiff was transported to the Robeson County Courthouse to attend a hearing. As the officers returned her to her cell, she told them again that she needed medical care.

On 27 October 1998, plaintiff requested another sick call request slip from the detention officers. She completed it and put it in the window of her cell. When the officers asked how she was feeling, she told them that she felt as if she "was going to die." Plaintiff testified: "And I just kept complaining to anybody and everybody that I thought might listen." Once plaintiff learned that the pain medication prescribed by the doctor had been halted, she repeatedly asked to get her medication back. Her pain continued to worsen over the course of the day until she could barely move. Still, the officers did not take her to the clinic.

On 28 October 1998, after plaintiff filled out another sick call request slip, a detention officer finally took her to see Dr. Locklear. Dr. Locklear examined her and ordered additional tests. He told plaintiff that he would give her something else for her pain and sent her back to her cell. Later that day, plaintiff traveled to Lumberton Radiological Associates where an ultrasound procedure revealed acute gangrenous appendicitis with peritonitis.

Due to the advanced nature of the appendicitis, plaintiff was admitted to Southeastern Regional Medical Center where Dr. Samuel Britt performed an emergency appendectomy. Her condition was consistent with an appendicitis left untreated for five days. Following the

surgery, plaintiff twice suffered a bowel obstruction requiring two additional surgeries. According to Dr. Britt, a "direct connection" existed between the surgical complications plaintiff suffered and the delay in removing plaintiff's appendix.

Boyd brought suit against defendants for violation of the Eighth and Fourteenth Amendments of the federal constitution, negligence, and spoliation of evidence. Prior to the hearing on defendants' motion for partial summary judgment, plaintiff voluntarily dismissed the following claims without prejudice: (1) all 42 U.S.C. § 1983 claims against Dr. Locklear in his official and individual capacities; (2) all 42 U.S.C. § 1983 supervisory liability claims against defendants Chief Jailer Williams, Chief of Operations Harris, and Dr. Strawcutter, Medical Director of Jail Health Services, in their individual capacities; (3) all 42 U.S.C. § 1983 claims against defendants Maynor, Williams, Harris, and Strawcutter in their individual capacities; (4) all common law negligence claims against defendants Maynor, Williams, Harris, and the seven named detention officers in their individual capacities; (5) all common law negligence claims against defendants Williams and Harris in their official capacities; and (6) the spoliation of evidence claims against all defendants. As to the remaining claims, Superior Court Judge Jack A. Thompson denied defendants' motion for partial summary judgment.

## Interlocutory Appeal

[1] Defendants argue primarily on appeal that the trial court erred in denying their motion for partial summary judgment because (1) the Sheriff of Robeson County and the employees of the Sheriff's Department sued in their official capacity are not "persons" who may be sued under 42 U.S.C. § 1983, and (2) the detention officers sued in their individual capacity are entitled to qualified immunity. Because this appeal comes to this Court from the trial court's denial of a motion for partial summary judgment, this appeal is interlocutory. *Embler v. Embler*, 143 N.C. App. 162, 164-65, 545 S.E.2d 259, 261 (2001). An interlocutory appeal is ordinarily permissible only if (1) the trial court certified the order under Rule 54(b) of the Rules of Civil Procedure, or (2) the order affects a substantial right that would be lost without immediate review. *Id.*

Since this Court has consistently held that a denial of summary judgment grounded on claims of governmental immunity affects a substantial right, *Schmidt v. Breeden*, 134 N.C. App. 248, 251, 517 S.E.2d 171, 174 (1999), the detention officers' appeal from the trial

court's denial of summary judgment on their defense of qualified immunity is properly before the Court. This Court has not previously addressed whether denial of a summary judgment motion addressing whether a governmental entity is a "person" for purposes of 42 U.S.C. § 1983 affects a substantial right. In other contexts, however, this Court has held that defenses, such as the public duty doctrine, involving the same considerations as governmental immunity do involve a substantial right. *See Hedrick v. Rains,* 121 N.C. App. 466, 468, 466 S.E.2d 281, 283, *aff'd per curiam,* 344 N.C. 729, 477 S.E.2d 171 (1996). We believe that the question whether a governmental entity is a "person" under § 1983 is analogous to the public duty doctrine and claims of immunity and, therefore, hold that it involves a substantial right permitting an interlocutory appeal.

**[2]** Defendants have, however, also argued on appeal (1) that Robeson County cannot be held liable for the negligence of Sheriff Maynor and other jail staff and (2) that plaintiff failed to present sufficient evidence that the Sheriff and the detention officers in their official capacities were negligent. Since these arguments do not involve any claim of immunity and defendants have made no other showing as to how this aspect of the trial court's ruling affected a substantial right, we decline to address these arguments and dismiss this portion of defendants' appeal. *See Jeffreys v. Raleigh Oaks Joint Venture,* 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994) ("It is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order . . . .").[1]

### Discussion

The North Carolina Rules of Civil Procedure provide that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party

---

1. Plaintiff has argued that defendants' appeal should be dismissed for failure to comply with the Rules of Appellate Procedure. Contrary to the Rules, defendants did not file with the record on appeal the depositions and exhibits upon which they ultimately relied in their appellate brief. Instead, defendants included this material in an appendix to their brief. We may not consider evidentiary material submitted in an appendix that was not served with the proposed record and filed with the record in accordance with N.C.R. App. P. 9(a)(1)(e), 9(c). We have, however, in our discretion, allowed the parties' joint motion to amend the record on appeal to include the materials submitted as appendices to the parties' briefs.

opposing the motion.'" *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 James W. Moore, *Moore's Federal Practice* § 56-15[3], at 2337 (2d ed. 1971)). On appeal, this Court conducts a *de novo* review of the trial court's order. *Va. Elec. & Power Co. v. Tillett*, 80 N.C. App. 383, 384-85, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

I. CLAIMS AGAINST THE ROBESON COUNTY SHERIFF

Plaintiff is pursuing her § 1983 claims against Glenn Maynor, the Sheriff of Robeson County, and defendants Williams and Harris only in their official capacities. Plaintiff also sued the detention officers both in their official capacities and their individual capacities. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66, 87 L. Ed. 2d 114, 121, 105 S. Ct. 3099, 3105 (1985) (internal quotation marks omitted). The official capacity claims in this case are, therefore, actually claims against the office of the Sheriff of Robeson County.

**[3]** Defendant contends that a North Carolina sheriff—or his employees—may not be sued in their official capacities under 42 U.S.C. § 1983. That statute provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The question is whether the office of North Carolina sheriff is a "person" within the meaning of § 1983.

The United States Supreme Court has held that a State, when sued for damages, is not included within the scope of the phrase "[e]very person," as used in § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 105 L. Ed. 2d 45, 53, 109 S. Ct. 2304, 2306 (1989) ("[A] State is not a person within the meaning of § 1983.").[2] It is equally

---

2. In federal court, the issue is usually addressed under the Eleventh Amendment. *See Will*, 491 U.S. at 66, 105 L. Ed. 2d at 55, 109 S. Ct. at 2309 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations

well-established that local governmental bodies are "persons" under § 1983:

> Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 635, 98 S. Ct. 2018, 2035-36 (1978). The North Carolina Supreme Court has explained, following *Monell*, that "[a]lthough a municipal government is a creation of the State, it does not have the immunity granted to the State and its agencies." *Moore v. City of Creedmoor*, 345 N.C. 356, 365, 481 S.E.2d 14, 20 (1997). The more precise issue before this Court is, therefore, whether the office of sheriff in North Carolina is "the State" or is a "local governmental unit."

A. Prior Decisions of North Carolina's Appellate Courts

Our Supreme Court answered this question more than 50 years ago. In *Southern Ry. Co. v. Mecklenburg County*, 231 N.C. 148, 56 S.E.2d 438 (1949), the Court first addressed the role of counties in our State:

> One of the primary duties of the county, acting through its public officers, is to secure the public safety by enforcing the law, maintaining order, preventing crime, apprehending criminals, and protecting its citizens in their person and property. This is an indispensable function of county government which the county officials have no right to disregard and no authority to abandon.

*Id.* at 151, 56 S.E.2d at 440. The Court then held in unmistakable language: "The sheriff is the chief law enforcement officer of the

---

of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity . . . ."). When, however, the State is sued solely for injunctive relief, it is a "person" and there is no Eleventh Amendment bar. *Id.* at 71 n.10, 105 L. Ed. 2d at 58 n.10, 109 S. Ct. at 2312 n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" (quoting *Graham*, 473 U.S. at 167 n.14, 87 L. Ed. 2d at 122 n.14, 105 S. Ct. at 3106 n.14)).

county." *Id.* Three years ago, the North Carolina Supreme Court, in discussing the importance of counties, relied upon this portion of *Southern Railway* when describing the role of counties in "effect[ing] the administration of justice within [their] borders" and observed, "[e]ach county elects a sheriff." *Stephenson v. Bartlett*, 355 N.C. 354, 365, 562 S.E.2d 377, 386 (2002).

In addition, plaintiff points to *Hull v. Oldham*, 104 N.C. App. 29, 407 S.E.2d 611, *disc. review denied*, 330 N.C. 441, 412 S.E.2d 72 (1991). In *Hull*, the Sheriff's Department defendants argued that sheriffs and deputies are state officers and, therefore, jurisdiction over claims asserted against them lay solely in the Industrial Commission under the State Tort Claims Act. *Id.* at 41, 407 S.E.2d at 618. In rejecting this argument, this Court held:

> Article VII of the North Carolina Constitution entitled "Local Government" provides that "[t]he General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities, and towns." N.C. Const. art. VII, § 1. Article VII further provides: "[i]n each county a Sheriff shall be elected by the qualified voters thereof at the same time and places as members of the General Assembly are elected and shall hold his office for a period of four years, subject to removal for cause as provided by law." N.C. Const. art. VII, § 2. In providing for the organization of local governments, our Constitution does not make sheriffs state rather than local officers. . . . Our courts have consistently exercised jurisdiction on appeal from the superior courts. . . . Defendants have cited no North Carolina case in which sheriffs were not considered local officers.

*Id.* Thus, *Hull* held—consistent with *Southern Railway*—that North Carolina sheriffs are part of local government and are not "the State" for purposes of the State Tort Claims Act.

Defendants, however, point to a trio of subsequent decisions by this Court. In the first decision, *Slade v. Vernon*, 110 N.C. App. 422, 429, 429 S.E.2d 744, 748 (1993), this Court affirmed a grant of summary judgment in favor of Sheriff's Department defendants sued in their official capacities, stating only: "Furthermore, our courts have held that plaintiffs may not maintain a suit against defendants in their *official* capacities for violation of section 1983 under these circumstances, because the only remedy plaintiffs sought is monetary damages." The *Slade* opinion cites only *Lenzer v. Flaherty*, 106

N.C. App. 496, 513, 418 S.E.2d 276, 287, *disc. review denied,* 332 N.C. 345, 421 S.E.2d 348 (1992) for this holding—even though *Lenzer* involved only employees of the State's Department of Human Resources and did not address sheriffs or any other individuals outside of state agencies.

The second opinion, *Messick v. Catawba County,* 110 N.C. App. 707, 431 S.E.2d 489, *disc. review denied,* 334 N.C. 621, 435 S.E.2d 336 (1993), was decided a month later. It cited *Corum v. Univ. of N.C.,* 330 N.C. 761, 771, 413 S.E.2d 276, 282-83 (holding that "neither a State nor its officials" are "persons" under § 1983 when sued for monetary damages), *cert. denied,* 506 U.S. 985, 121 L. Ed. 2d 431, 113 S. Ct. 493 (1992), and *Faulkenbury v. Teachers' & State Employees' Ret. Sys. of N.C.,* 108 N.C. App. 357, 366, 424 S.E.2d 420, 424 (holding that "neither the State nor its officials" are "persons" when sued for monetary damages), *disc. review denied,* 334 N.C. 162, 432 S.E.2d 358, *aff'd per curiam on other grounds,* 335 N.C. 158, 436 S.E.2d 821 (1993) and held: "Because the plaintiff in the instant case seeks monetary damages, he is not entitled to relief pursuant to section 1983 against the County, the Commissioners, or the sheriff and the officers sued in their official capacity." *Messick,* 110 N.C. App. at 713-14, 431 S.E.2d at 493.

In *Buchanan v. Hight,* 133 N.C. App. 299, 515 S.E.2d 225, *appeal dismissed and disc. review denied,* 351 N.C. 351, 539 S.E.2d 280 (1999), defendants' third case, this Court acknowledged *Hull,* but concluded that "plaintiffs' arguments [that a Sheriff is a 'person' under § 1983] are not persuasive because the only two appellate decisions in this State decided since *Hull* and dealing with section 1983 as applied to sheriffs hold to the contrary." *Id.* at 304, 515 S.E.2d at 229. The opinion then reasoned:

> In *Corum,* our Supreme Court held that when an action under 42 U.S.C. § 1983 seeking monetary damages is brought against "the State, its agencies, and/or its officials acting in their official capacities" in state court neither the State nor its officials are considered "persons" within the meaning of the statute. Thus, a claim under section 1983 cannot be made against those entities. This rule was applied to sheriffs by this Court in *Messick* and *Slade. . . .* Here, plaintiffs seek monetary damages for the alleged violations of section 1983; however, under *Messick* and *Slade* we conclude no recovery is available.

*Id.* at 304-05, 515 S.E.2d at 229 (internal citations omitted).

**BOYD v. ROBESON CTY.**

[169 N.C. App. 460 (2005)]

None of these three decisions mentions *Southern Railway* and each predates *Stephenson*. Further, the three decisions, by holding that a sheriff is "the State," effectively overrule *Hull*. It is, however, axiomatic that an appellate panel may not interpret North Carolina law in a manner that overrules a decision reached by another panel in an earlier opinion. *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Our Supreme Court recently reemphasized this point in *State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125, 134 (2004): "While we recognize that a panel of the Court of Appeals may disagree with, or even find error in, an opinion by a prior panel and may duly note its disagreement or point out that error in its opinion, the panel is bound by that prior decision until it is overturned by a higher court."

We also observe that the limited analysis of *Slade* and *Messick* had effectively been overruled by our Supreme Court. In *Moore v. City of Creedmoor*, 120 N.C. App. 27, 49, 460 S.E.2d 899, 912 (1995), *aff'd in part, rev'd in part*, 345 N.C. 356, 481 S.E.2d 14 (1997), this Court held:

> Because plaintiffs in the case *sub judice* seek monetary damages for alleged violation of their constitutional rights, they are not entitled to relief under section 1983 against the City, or against [the police chief] and [a city commissioner] in their *official* capacities, *Corum*, 330 N.C. at 771, 413 S.E.2d at 283; *see also Messick*, 110 N.C. App. at 713-14, 431 S.E.2d at 493 (citations omitted), and summary judgment was proper as to those claims.

The Supreme Court granted discretionary review specifically to point out the inaccuracy of this analysis:

> We reverse the Court of Appeals. In determining this issue, the Court of Appeals erroneously relied on *Corum* . . . . In *Corum*, this Court correctly relied on *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45 (1989), in holding that the State of North Carolina and its agencies are not "persons" within the meaning of section 1983 and therefore could not be sued for monetary damages under that statute. In the present case, the Court of Appeals erroneously applied the holding of *Corum* to dismiss plaintiffs' claims against a municipality and its officials. Although a municipal government is a creation of the State, it does not have the immunity granted to the State and its agencies.

*Moore*, 345 N.C. at 365, 481 S.E.2d at 20. Because of the Court of Appeals' misconception that county and city officials may not be sued in their official capacity under § 1983, it is impossible to determine whether the *Messick* and *Slade* panels reached their holdings regarding a sheriff based on a proper analysis of § 1983 or based on their mistaken belief that local officials do not fall within the scope of § 1983. Since the Supreme Court effectively overruled *Slade* and *Messick*, the panel in *Buchanan* further erred in relying upon them.

Defendants urge that *Buchanan* did not overrule *Hull* because the two cases address different issues. Defendants contend that a North Carolina sheriff may be treated as a local official under *Hull* for purposes of the State Tort Claims Act and waiver of state sovereign immunity, but still be treated as "the State" for purposes of § 1983. Such an approach is precluded by the Supremacy Clause of the federal constitution.

In *Howlett v. Rose*, 496 U.S. 356, 365-66, 110 L. Ed. 2d 332, 346, 110 S. Ct. 2430, 2436 (1990), the United States Supreme Court addressed Florida case law that "extended absolute immunity from suit not only to the State and its arms but also to municipalities, counties, and school districts who might otherwise be subject to suit under § 1983 in federal court." The Court initially observed: "That holding raises the concern that the state court may be evading federal law and discriminating against federal causes of action." *Id.* at 366, 110 L. Ed. 2d at 346, 110 S. Ct. at 2436. After determining that the Florida state courts would entertain state tort claims against state entities, such as school boards, and that the school board had offered no neutral or valid excuse for the trial court's refusal to hear § 1983 actions against the same entities, the Supreme Court held:

> A state policy that permits actions against state agencies for the failure of their officials to adequately police a parking lot and for the negligence of such officers in arresting a person on a roadside, but yet declines jurisdiction over federal actions for constitutional violations by the same persons can be based only on the rationale that such persons should not be held liable for § 1983 violations in the courts of the State. That reason . . . flatly violates the Supremacy Clause.

*Id.* at 380-81, 110 L. Ed. 2d at 356, 110 S. Ct. at 2245.

The effect of defendants' approach in this case is similar: they would have us hold that, although a superior court has jurisdiction

over sheriffs for tort claims because a sheriff is a local governmental officer, it does not have authority to hear a § 1983 claim against the sheriff because, for the federal claim, he is part of "the State." This constitutes discrimination against § 1983 claims in violation of the Supremacy Clause. *See also McKnett v. St. Louis & San Francisco Ry. Co.*, 292 U.S. 230, 234, 78 L. Ed. 1227, 1229, 54 S. Ct. 690, 692 (1934) ("A state may not discriminate against rights arising under federal laws."); *Hughes v. Sheriff of Fall River County Jail*, 814 F.2d 532, 535 (8th Cir.) ("South Dakota has singled out federal claims, subjecting them to more restrictive tolling provisions than those governing analogous state-law claims. . . . That it is permissible for there to be no tolling provision does not mean that a state may provide tolling for state claims but refuse to do so for analogous federal claims and have this discrimination against federal claims incorporated as federal law."), *appeal dismissed and cert. denied*, 484 U.S. 802, 98 L. Ed. 2d 10, 108 S. Ct. 46 (1987); *Williamson v. Dep't of Human Res.*, 258 Ga. App. 113, 116, 572 S.E.2d 678, 681 (2002) ("[T]he state may not selectively cloak itself in sovereign immunity as to *federal* disability discrimination by its employees. To do so would discriminate against federally based rights which the Supremacy Clause of the Constitution of the United States forbids states to do."), *cert. denied*, 2003 Ga. LEXIS 153 (2003).

Moreover, defendants' approach cannot be reconciled with *McMillian v. Monroe County*, 520 U.S. 781, 138 L. Ed. 2d 1, 117 S. Ct. 1734 (1997)—an opinion relied upon by *Buchanan*. In *McMillian*, the Supreme Court held that while state law determines whether the acts of a sheriff can render a county liable under § 1983, "[t]his is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy." *Id.* at 786, 138 L. Ed. 2d at 8, 117 S. Ct. at 1737. Yet, that is precisely what *Buchanan*, *Messick*, and *Slade* purport to do: label a sheriff as a state official without regard to state law.

B. United States Supreme Court Decisions Defining a "Person" under § 1983

*Buchanan's* citation of *McMillian* suggests the panel believed that United States Supreme Court authority has rendered *Hull* immaterial. We, therefore, review the pertinent Supreme Court decisions.[3]

---

3. Notably, the Fourth Circuit has also conducted a review of the relevant Supreme Court decisions and held that a North Carolina sheriff is a "person" under § 1983 and is not entitled to Eleventh Amendment immunity. *Harter v. Vernon*, 101 F.3d 334, 338 n.1 & 343 (4th Cir. 1996), *cert. denied*, 521 U.S. 1120, 138 L. Ed. 2d 1014,

BOYD v. ROBESON CTY.

[169 N.C. App. 460 (2005)]

In *Will*, the United States Supreme Court acknowledged that the question whether an entity is entitled to Eleventh Amendment immunity is a separate issue from whether an entity is a "person" under § 1983. The Court nonetheless held that "the scope of the Eleventh Amendment is a consideration" in defining who is a "person" under § 1983. *Will*, 491 U.S. at 66-67, 105 L. Ed. 2d at 55, 109 S. Ct. at 2310. In *Howlett*, the Court construed *Will* as "establish[ing] that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court." 496 U.S. at 365, 110 L. Ed. 2d at 346, 110 S. Ct. at 2437. The question presently before this Court is, therefore, whether a North Carolina sheriff is an "arm of the State" that has "traditionally enjoyed Eleventh Amendment immunity." *Id. See also Harter*, 101 F.3d at 338 n.1 ("If an official or entity is not immune from suit under the Eleventh Amendment that official or entity is a 'person' subject to suit under § 1983."); *Simon v. State Comp. Ins. Auth.*, 946 P.2d 1298, 1302 (Colo. 1997) ("[U]nder *Will*, an Eleventh Amendment arm-of-the-state analysis must be applied to determine whether a state-created entity is a 'person' under § 1983."), *cert. denied*, 523 U.S. 1124, 1133, 140 L. Ed. 2d 947, 963, 118 S. Ct. 1808, 1827 (1998); *J.A.W. v. Marion County Dep't of Pub. Welfare*, 687 N.E.2d 1202 (Ind. 1997) (applying Eleventh Amendment arm-of-the-State analysis to determine if an entity is a person as used in § 1983).

In the United States Supreme Court's most recent pertinent Eleventh Amendment immunity decision, it held:

> Ultimately, of course, the question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State, and therefore "one of the United States" within the meaning of the Eleventh Amendment, is a question of federal law. But that federal question can be answered only after considering the provisions of state law that define the agency's character.

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 n.5, 137 L. Ed. 2d 55, 61 n.5, 117 S. Ct. 900, 904 n.5 (1997). The Court in *Regents* also reaffirmed its holding in *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 130 L. Ed. 2d 245, 115 S. Ct. 394 (1994), stating that "the question whether a money judgment against a state instrumentality or official would be enforceable against the State is of

---

117 S. Ct. 2511 (1997). The court reaffirmed this holding in *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 227 (4th Cir. 2001).

considerable importance to any evaluation of the relationship between the State and the entity or individual being sued." *Regents*, 519 U.S. at 430, 137 L. Ed. 2d at 61, 117 S. Ct. at 904. The Court clarified, however, that the issue is not ultimate financial liability, but rather "the entity's potential legal liability." *Id.* at 431, 137 L. Ed. 2d at 61, 117 S. Ct. at 904.

In a second case, decided the same day as *Regents*, the United States Supreme Court relied upon a third factor. In *Auer v. Robbins*, 519 U.S. 452, 456 n.1, 137 L. Ed. 2d 79, 87 n.1, 117 S. Ct. 905, 908 n.1 (1997), the Court dismissed a contention that a Board of Police Commissioners was entitled to Eleventh Amendment immunity. The Court relied upon the fact that even though the governor of Missouri appointed four of five board members, the City of St. Louis was responsible for the Board's financial liabilities and the Board was not subject to the State's direction or control in any other respect. *Id. See also Hess*, 513 U.S. at 44, 130 L. Ed. 2d at 258, 115 S. Ct. at 402-03 (holding that the authority of the State over the defendant is an indicator of immunity).

In *Regents*, *Hess*, and *Auer*, the Supreme Court has thus most recently focused on three factors in its Eleventh Amendment analysis: (1) how provisions of state law characterize the defendant, (2) whether the State is potentially liable for any money judgment against the defendant, and (3) whether the defendant is subject to the State's direction or control. We hold that each of these factors leads to the conclusion that a North Carolina sheriff is a "person" for purposes of § 1983.

Although *McMillian* did not address the question of "personhood" under § 1983, it does provide guidance in the analysis of state law. In *McMillian*, the Court addressed whether an Alabama sheriff was a final policymaker for a county so as to render the county liable for the sheriff's acts under § 1983. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 89 L. Ed. 2d 452, 463, 106 S. Ct. 1292, 1298 (1986) (holding that a municipality may be held liable for decisions of the final policymaker for the municipality). After noting that the Court's "inquiry is dependent on an analysis of state law," the Court stated "[w]e begin with the Alabama Constitution, the supreme law of the state." *McMillian*, 520 U.S. at 787, 138 L. Ed. 2d at 8, 117 S. Ct. at 1737 (internal quotation marks omitted). The Court relied as "strong evidence" upon the Alabama Supreme Court's construction of the state constitution as establishing that Alabama sheriffs "are state officers, and that tort claims brought against sheriffs based on their

official acts therefore constitute suits against the State." *Id.* at 789, 138 L. Ed. 2d at 10, 117 S. Ct. at 1738.

Under this analysis, the *Buchanan* panel should not have dismissed *Hull* as immaterial. Under *McMillian*, *Hull's* determination that the North Carolina constitution establishes Sheriff Departments as local governmental entities is critical to answering the question of how North Carolina law categorizes a sheriff. As *Hull* recognized, the state constitution creates the office of sheriff, N.C. Const. art. VII, § 2, but includes that provision within the article governing "Local Government," along with provisions for counties, cities, towns, "and other governmental subdivisions." N.C. Const. art. VII, § 1.

The *McMillian* Court considered statutory provisions as well, although it gave them less weight. 520 U.S. at 789-91, 138 L. Ed. 2d at 10-11, 117 S. Ct. at 1739-40. In North Carolina, the relevant statutory provisions also indicate that a sheriff is a local officer rather than an arm of the State. The General Assembly has stated that "[t]he sheriff is the only officer of local government required by the Constitution." N.C. Gen. Stat. § 17E-1 (2003). Further, the General Assembly has defined the Sheriff's Department as a "Local Law Enforcement Agency" rather than a "State Law-Enforcement Agency". N.C. Gen. Stat. § 160A-288.2 (2003). Likewise, the Sheriff's Department participates in the Retirement Income Plan for Local Governmental Law-Enforcement Officers, N.C. Gen. Stat. § 143-166.50 (2003), and the Workers Compensation Act deems deputy sheriffs to be employees of the county, N.C. Gen. Stat. § 97-2(2) (2003). State statutes thus characterize a Sheriff's Department as a local governmental entity.

The next factor is the State's potential liability for any monetary damage award against a sheriff. Here, there has been no contention that the State would be potentially liable for any monetary judgment entered against defendants. Nor have we uncovered any statutory or case law suggesting a basis for holding the State responsible for such a judgment. *See Harter*, 101 F.3d at 340 ("It is undisputed that North Carolina does not have to satisfy judgments against sheriffs."). *See also Smith v. Phillips*, 117 N.C. App. 378, 384, 451 S.E.2d 309, 314 (1994) ("[W]e conclude that waiver of a sheriff's official immunity may be shown by the existence of his official bond as well as by *his county's purchase of liability insurance*." (emphasis added)).

Finally, we turn to the question of a sheriff's autonomy from or control by the State. *Hess* urges care in applying this factor since "ultimate control of every state-created entity resides with the State,

for the State may destroy or reshape any unit it creates." *Hess*, 513 U.S. at 47, 130 L. Ed. 2d at 260, 115 S. Ct. at 404. Moreover, the "control" factor is not dispositive: the Court found that the fact that States appointed and removed commissioners of the governmental body, that governors could veto the entity's actions, and that state legislatures could dictate which projects the entity undertook was not sufficient for Eleventh Amendment immunity. *Id.*

Justice O'Connor's dissent—representing a broader view of the scope of the Eleventh Amendment than the majority—attempted to define the degree of control necessary. The dissent would require "lines of oversight [that] are clear and substantial." *Id.* at 61, 130 L. Ed. 2d at 269, 115 S. Ct. at 411. The entity is considered an arm of the State "if the State appoints and removes an entity's governing personnel and retains veto or approval power over an entity's undertakings." *Id.* Like the majority, Justice O'Connor stressed that not all state oversight is sufficient: "The inquiry should turn on real, immediate control and oversight, rather than on the potentiality of a State taking action to seize the reins." *Id.* at 62, 130 L. Ed. 2d at 269, 115 S. Ct. at 411.

Since North Carolina does not have even the degree of control over a sheriff to meet the test specified in the *Hess* dissent, there cannot be a sufficient degree of State oversight to meet the requirements of the majority view. In North Carolina, the State has no control over the selection of sheriffs. Initially, that is the responsibility of a county's citizens. N.C. Const. art. VII, § 2. If a sheriff wishes to resign, he tenders his resignation to the county commissioners and they may then appoint a new sheriff. N.C. Gen. Stat. § 162-3 (2003). If a vacancy occurs for any other reason, it remains the responsibility of the county commissioners to select a new sheriff to serve the remainder of the term. N.C. Gen. Stat. §§ 162-5, -5.1 (2003). The board of county commissioners must also approve the sheriff's bond, and if the commissioners deem it insufficient, the sheriff must forfeit his office, allowing the board to choose a replacement. N.C. Gen. Stat. §§ 162-9, -10 (2003).

A sheriff's power is limited to acting within his county. N.C. Gen. Stat. § 162-14 (2003). The State has no authority to veto or approve a sheriff's actions within that county. *See* A. Fleming Bell, II and Warren J. Wicker, *County Government in North Carolina* 931 (4th ed. 1998) ("[T]he state generally exercises little control over local law enforcement operations (except by legislative enactment of the criminal laws themselves) . . . ."). It is up to the county electorate to determine

whether the sheriff is properly administering his office. Indeed, in North Carolina, "the control of the employees hired by the sheriff is vested exclusively in the sheriff." *Peele v. Provident Mut. Life Ins. Co.*, 90 N.C. App. 447, 450, 368 S.E.2d 892, 894, *appeal dismissed and disc. review denied*, 323 N.C. 366, 373 S.E.2d 547 (1988).

The General Assembly has enacted statutes specifying the duties of the sheriff and regulating the training of deputy sheriffs. An entity is not, however, an arm of the State simply because North Carolina regulates it or even because the state constitution creates it. *See Hess*, 513 U.S. at 47, 130 L. Ed. 2d at 260, 115 S. Ct. at 404. Municipalities and counties are "persons" under § 1983, yet they too are created by the state constitution and are more extensively regulated than sheriffs. *Compare* N.C. Gen. Stat. §§ 153A-1 *et seq.* (2003) (counties) and 160A-1 *et seq.* (2003) (cities and towns) *with* N.C. Gen. Stat. §§ 162-1 *et seq.* (2003) (sheriffs). In short, in North Carolina, the State does not have, with respect to a sheriff, the minimum degree of control required by *Hess* for Eleventh Amendment immunity.

Thus, each of the factors identified in the decisions of the United States Supreme Court since *Hull* points to the same conclusion: that a sheriff is a "person" within the meaning of § 1983. Rather than rendering *Hull* immaterial, as *Buchanan* suggests, these federal cases confirm its importance. We are bound by *Southern Railway* and *Hull* and, accordingly, hold that the trial court properly concluded that the office of North Carolina sheriff is a "person" under § 1983.

## II. THE INDIVIDUAL DETENTION OFFICERS

The individual detention officers also argue that the trial court erred in denying summary judgment as to the claims asserted against them in their individual capacities because (1) the claims were actually brought against them in their official capacities; (2) they are entitled to qualified immunity; and (3) the evidence was insufficient to establish any wrongdoing performed by the specific individual defendants. We disagree with respect to the first two arguments and decline to address the third argument as not properly before the Court on an interlocutory appeal.

### A. Official Versus Individual Capacity Suits

[4] The detention officers first argue that "the remaining individual capacity claims are not truly individual capacity claims at all, but rather are additional official capacity claims" because "the substantive allegations related solely to actions undertaken by the deputy as

part of his official duties." Our Supreme Court has, however, rejected this argument.

In *Isenhour v. Hutto*, 350 N.C. 601, 609, 517 S.E.2d 121, 127 (1999), a school crossing guard was sued in both her official and individual capacities. Defendants contended, however, like defendants here, that "the claim against [the crossing guard] arises solely in her official capacity because '[a]ll of the negligent acts and omissions which [the crossing guard] is alleged to have committed concern the manner in which she performed her duties as a crossing guard.' " The Court held: "As we stated in *Meyer*, however, whether plaintiff's allegations relate to acts performed outside an employee's official duties is not relevant to the determination of whether a defendant is being sued in an official or individual capacity." *Id.* (citing *Meyer v. Walls*, 347 N.C. 97, 111, 489 S.E.2d 880, 888 (1997)).

Although defendants point to *Trantham v. Lane*, 127 N.C. App. 304, 307, 488 S.E.2d 625, 628 (1997), that decision was filed prior to *Meyer* and *Isenhour*. This Court has since acknowledged that "[w]hether a plaintiff's allegations relate to actions outside the scope of a defendant's official duties is relevant in determining if the defendant is entitled to [official] immunity, but it is 'not relevant in determining whether the defendant is being sued in his or her official or individual capacity.' " *Andrews v. Crump*, 144 N.C. App. 68, 78, 547 S.E.2d 117, 124 (quoting *Meyer*, 347 N.C. at 111, 489 S.E.2d at 888), *disc. review denied*, 354 N.C. 215, 553 S.E.2d 907 (2001).

In this case, (1) the amended complaint's caption reveals that the individual jail defendants are being sued in both their individual and official capacities, (2) the specific allegations of the amended complaint confirm the dual bases for suit (including separate causes of action based on the differing capacities), (3) the amended complaint expressly seeks monetary damages from the defendants in their individual capacity, and (4) the actual litigation proceedings reflected the distinction in capacities. The defendants have, therefore, been properly sued in both their individual and official capacities. *Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 724-25 (1998); *Meyer*, 347 N.C. at 110, 489 S.E.2d at 887.

B. Qualified Immunity

[5] The detention officers next argue that summary judgment should have been granted on the § 1983 claims based on qualified immunity.[4]

---

4. Defendants include Dr. Strawcutter, the Medical Director, in their argument, as well as the detention officers. The trial court's order, however, indicates that all

The United States Supreme Court has held that "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is *whether plaintiff's allegations*, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 153 L. Ed. 2d 666, 676, 122 S. Ct. 2508, 2513 (2002) (emphasis added). In making this determination, even with respect to a motion for summary judgment, the Supreme Court has directed that we look at what "facts are alleged by [the plaintiff]." *Id.* at 738, 153 L. Ed. 2d at 677, 122 S. Ct. at 2514.

Almost 30 years ago, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs *or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.*" *Estelle v. Gamble*, 429 U.S. 97, 104-05, 50 L. Ed. 2d 251, 260, 97 S. Ct. 285, 291 (1976) (emphasis added) (internal quotation marks and citations omitted).

Here, plaintiff has alleged that even though the doctor had stated that she should see him again the next day, the detention officers did not return her to the infirmary for that visit. Then, according to plaintiff's amended complaint, for more than two days, the detention officers ignored her sick call slips and her repeated requests for medical care despite her constant complaints of "excruciating abdominal and back pain, nausea, vomiting, fever, inability to sleep or eat properly and inability to have regular bowel movements," leaving plaintiff to suffer appendicitis unattended. These allegations are sufficient to state a violation of the Eighth Amendment.

There can be no question that appendicitis is a serious medical condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000) ("As we found recently in a very similar case, an appendix on the verge of rupturing easily meets this standard [requiring an objectively serious medical condition].");  *Chavez v. Cady*, 207 F.3d 901, 904 (7th Cir. 2000) (holding that appendicitis is a serious medical condition).

Further, the allegations that the officers did not return plaintiff to see the doctor as prescribed and then ignored her requests for medical care despite her complaints of serious pain are sufficient to allege that the officers acted with deliberate indifference to plaintiff's med-

---

individual capacity claims asserted against Dr. Strawcutter have been dismissed without prejudice.

ical needs. *See Estelle*, 429 U.S. at 104-05, 50 L. Ed. 2d at 260, 97 S. Ct. at 291 (Eighth Amendment violated when prison guards deny or delay access to medical care or interfere with prescribed treatment); *Sherrod*, 223 F.3d at 611-12 (even though the plaintiff was not entirely ignored by the staff, evidence that they disregarded the plaintiff's worsening condition due to a ruptured appendix over the days following his receiving medical care supported a claim for a violation of the Eighth Amendment); *Chavez*, 207 F.3d at 906 (evidence supported Eighth Amendment claim when officers disregarded the plaintiff's repeated request to see the doctor and his complaints about severe pain, which—it was later determined—was caused by a ruptured appendix). *See also Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (officers' knowledge was established by evidence "that the plaintiffs directed their request to the world at large, as it were, by screaming from their cells, rather than directing the request to a specific guard" when "[t]he defendants were all stationed in the plaintiffs' wing of the prison").

*Hope* explains that even if officers participated in constitutionally impermissible conduct, they "may nevertheless be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739, 153 L. Ed. 2d at 678, 122 S. Ct. at 2515 (internal quotation marks omitted). For a constitutional right to be clearly established:

> its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* (internal quotation marks and citations omitted).

Defendants state that they "do not dispute that Plaintiff had a constitutional right to be free from cruel and unusual punishment and that her right was clearly established at all times relevant to this case." They argue instead that "Plaintiff's evidence fails to establish that these Defendants should have known that their actions would violate Plaintiff's specific constitutional rights." On this issue, the Supreme Court has held that "the salient question" is whether the state of the law in the year of the unconstitutional conduct "gave

[defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Id.* at 741, 153 L. Ed. 2d at 679, 122 S. Ct. at 2516. The question before this Court, therefore, is whether the state of the law in 1998 gave the defendant detention officers fair warning that their treatment of plaintiff violated the Eighth Amendment.

*Estelle* established in 1976 that the officers were not free to disregard the doctor's direction that plaintiff should return to see him the next day and that the infliction of pain through the denial of medical care—which occurred here when the officers ignored plaintiff's pain—violated the Eighth Amendment. Further, courts across the country had repeatedly held prior to 1998 that ignoring a request for medical assistance to alleviate complaints of severe pain violated the Eighth Amendment. *See, e.g., McElligott v. Foley,* 182 F.3d 1248, 1257 (11th Cir. 1999) (with respect to conduct occurring prior to 1998, observing "[o]ur cases, too, have recognized that prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain"); *Cooper,* 97 F.3d at 917 (if plaintiffs were in sufficient pain to require pain medication, a failure to take them to the infirmary over a 48-hour period would violate the Eighth Amendment); *Boretti v. Wiscomb,* 930 F.2d 1150, 1154 (6th Cir. 1991) ("Just because it was a holiday weekend does not relieve the nurse of her duty to respond if plaintiff . . . was in severe pain as he alleges."); *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976) ("We agree with the Ninth Circuit that a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering."). *See also Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir. 1999) (holding with respect to a prison officer's withholding pain medication prior to 1998 that "[n]ot only the general standard of liability under the Eighth Amendment for refusal to render medical treatment, but also the application of the standard to pain medication, are both unchanged since the events giving rise to this suit and reasonably clear and definite as applied to a case as extreme as this" (internal citations omitted)).

Defendants do not argue otherwise. Instead, they assert that plaintiff received "timely and adequate response to her requests for medical care" and "almost every complaint by Plaintiff to jail personnel resulted in timely if not immediate contact with a member of the medical staff." Defendants' recitation of their version of the facts ignores a fundamental principle: the evidence must be viewed in the light most favorable to plaintiff, as this Court recently stressed.

*Huber v. N.C. State Univ.*, 163 N.C. App. 638, 645, 594 S.E.2d 402, 408, *disc. review denied*, 358 N.C. 731, 601 S.E.2d 529 (2004).

Moreover, defendants have skipped over the two days of unrelieved pain suffered by plaintiff. The fact that plaintiff may have received some care—including emergency surgery when, as she contends, her requests for medical assistance were finally acknowledged—does not relieve defendants from their responsibility to obtain care for plaintiff during those two days. *See Sherrod*, 223 F.3d at 611-12 ("[A] prisoner is not required to show that he was literally ignored by the staff. If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not 'simply ignored.' "); *McElligott*, 182 F.3d at 1258 ("The fact that [plaintiff] was ultimately hospitalized does not change matters . . . .").

We hold that a reasonable officer in 1998 would have had fair warning that ignoring an inmate's requests for medical care to address severe pain, vomiting, and nausea—over two full days— would, under these circumstances, violate clearly established constitutional law. The trial court, therefore, properly denied defendants' motion for summary judgment on the issue of qualified immunity.

C. The Sufficiency of the Evidence

**[6]** Defendants also argue that the trial court erred in determining that plaintiff had presented sufficient evidence of a constitutional violation by the individual defendants to go to trial. This argument addresses the merits of plaintiff's claim and not any immunity defense. It is, however, well-established that a denial of a motion for summary judgment is an interlocutory order that generally cannot be the basis for an immediate appeal. *Anderson v. Atl. Cas. Ins. Co.*, 134 N.C. App. 724, 725, 518 S.E.2d 786, 787 (1999). This portion of defendants' appeal is, therefore, dismissed. *See also Behrens v. Pelletier*, 516 U.S. 299, 313, 133 L. Ed. 2d 773, 787, 116 S. Ct. 834, 842 (1996) ("[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case.").

Affirmed in part and dismissed in part.

Judges BRYANT and ELMORE concur.